[No. 48813-9-I. Division One. March 11, 2002.]

*In the Matter of the Dependency of* M.D.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL., *Appellants*, v. NATIVE VILLAGE OF TATITLEK, ET AL., *Respondents*.

526

*Christine O. Gregoire, Attorney General,* and *Catherine Cruikshank, Assistant,* for appellant Department of Social and Health Services.

*Dana M. Nelson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant Linda Damon.

*Craig J. Dorsay* and *Carol Farr,* for respondent Native Village of Tatitlek.

*Jennifer Shaw* on behalf of Charles W. Totemoff and Kimberly A. Benton, amici curiae.

AGID, C.J. — Linda Damon and the Washington Department of Social and Health Services (DSHS) appeal from an order granting the Tatitlek Native Village's CR 60(b) motion to vacate a prior court order which allowed Damon to revoke her consent to the relinquishment of her parental rights. Damon gave birth to M.D. in April 1998. About three months later, Damon voluntarily relinquished her parental rights to M.D. and DSHS filed a petition to terminate her parental rights. An order terminating the parent-child relationship was entered in due course. Almost two years later, Damon sought to revoke her consent to the termination of her parental rights. Appellants argue that under both the Indian Child Welfare Act (ICWA) and Washington law, Damon has the right to revoke her consent at any time before an order of adoption is entered. Damon also argues, in the alternative, that the consent form she signed is not enforceable.

We hold that neither ICWA nor Washington law gives Damon the right to revoke her consent to termination after a final order terminating her parental rights has been entered. However, because the language of the consent form Damon signed was misleading, Damon may be entitled to rescind her consent under the doctrine of mutual mistake. Therefore, we remand the case to the trial court to determine whether Damon can show that she would not have signed the consent form had she been properly informed about the nature of her statutory right to withdraw her consent.

## FACTS

Damon gave birth to M.D. on April 6, 1998. Both Damon and M.D. are enrolled members of the federally recognized tribe of the Native Village of Tatitlek (the Tribe). Because M.D. had a positive toxicology screen for cocaine at birth,

the hospital made a referral to Children's Protective Services. Damon admitted to using cocaine and marijuana in the weeks before she gave birth to M.D. and immediately expressed her desire to voluntarily relinquish her parental rights.[1]

M.D. went to the Pediatric Interim Care Center for observation and treatment for prenatal exposure to cocaine, marijuana, alcohol, and tobacco. She was released to the temporary care of her maternal aunt on May 4, 1998. There were no family members in the Seattle area able to provide M.D. with a permanent home at the time, so the family contacted Chuck Totemoff and Kim Benton, who agreed to take M.D. to their home in Alaska with the expectation of adopting her. Totemoff is Damon's first cousin and is also a member of the Tribe. M.D. has lived in Alaska with Totemoff and Benton since she was about seven weeks old.

On July 8, 1998, Damon appeared in court with counsel and executed a document entitled "Relinquishment of Custody, Consent to Termination/Adoption and Court Certification (Indian Child)." Six days later, then-Commissioner James Doerty entered an order terminating the parent-child relationship between Damon and M.D. The alleged birth father's parental rights were terminated by default on February 22, 1999.

In late 1999, questions arose about whether the preadoptive placement of M.D. remained appropriate in light of marital conflict that had arisen between Benton and Totemoff. The trial court denied DSHS' motion to remove M.D. from the Benton/Totemoff home but directed that the planned adoption could not proceed in Alaska until concurrent jurisdiction in Washington was established.

On June 1, 2000, nearly two years after Damon's parental rights were terminated, Damon filed a document called "Mother's Revocation of Consent to Termination." About a

---

[1] According to the Dependency Petition filed on April 27, 1998, Damon was offered a Voluntary Placement Agreement along with a CPS/Parent Contract for services, which she declined, stating that she did not want to care for the child.

month later, she filed a motion to set aside the voluntary termination of her parental rights, arguing that she had an absolute right to revoke her consent before M.D. was adopted.[2] DSHS supported the motion to restore Damon's parental rights. Benton and Totemoff opposed the motion, arguing that under both ICWA and Washington's adoption code, a consent to termination of parental rights cannot be revoked after a final order of termination is entered. On August 11, 2000, Commissioner Eric Watness denied Damon's request, stating that allowing Damon to revoke her relinquishment two years after the termination order was entered would "fl[y] in the face of [M.D.'s] best interests."

Damon sought revision of the Commissioner's ruling. On November 7, 2000, Judge Julie Spector revised the Commissioner's ruling in part, granting Damon's motion to set aside the voluntary relinquishment of her parental rights. Judge Spector found "clear and convincing evidence to support a finding that Ms. Damon believed and relied upon her right to revoke her consent prior to an adoption order being entered." The court reasoned that Damon's consent to relinquish her parental rights "was void from its inception" because the language of the consent she signed was "contradictory, misleading and void."[3]

On May 11, 2001, the Tribe filed a CR 60 motion seeking to set aside Judge Spector's order and reinstate the order terminating Damon's parental rights.[4] The Tribe argued that Damon's counsel made material factual misrepresentations to Judge Spector in the Motion for Revision of Commissioner Watness' order. The Tribe also argued that as a critical party to the proceedings, it should have been

---

[2] Damon never filed a motion to revoke her consent to *adoption*.

[3] Although Judge Spector granted Damon's motion to set aside the relinquishment, she also affirmed Commissioner Watness' finding that it was in M.D.'s best interests to remain with the preadoptive parents.

[4] CR 60(b)(4) allows the court to relieve a party from an order, judgment or proceeding if there is a finding of "[f]raud . . . , misrepresentation, or other misconduct of an adverse party."

given an opportunity to be heard on the Motion for Revision. Judge Mary Yu agreed with the Tribe on both grounds, setting aside Judge Spector's order and reinstating Commissioner Watness' ruling that Damon could not revoke the relinquishment of her parental rights after an order terminating those rights had been entered.

Damon and DSHS now appeal Judge Yu's order. The Tribe and the Court Appointed Social Advocates (CASA) are respondents here, and Totemoff and Benton have filed an amicus curiae brief.

## ANALYSIS

■ ■ CR 60 motions to set aside a court order "are addressed to the sound discretion of the trial court, whose judgment will not be disturbed absent a showing of a clear or manifest abuse of that discretion."[5] An abuse of discretion exists when no reasonable person would take the view adopted by the trial court.[6] However, construction of a statute is a question of law that we review de novo.[7]

### Indian Child Welfare Act (ICWA)

Congress passed ICWA in 1978 in response to a situation where Indian children were being removed from their birth families at a highly disproportionate rate in comparison with non-Indian children.[8] ICWA formally recognized a national policy "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their

---

[5] *Hope v. Larry's Mkts.*, 108 Wn. App. 185, 197, 29 P.3d 1268 (2001).

[6] *Id.*

[7] *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992).

[8] *See* Kim Laree, *When the Bough Breaks: Federal and Washington State Indian Child Welfare Law and its Application*, 17 U. Puget Sound L. Rev. 101, 104-08 (1993). Studies conducted in the late 1960s and early 1970s showed that in Washington, "there were nineteen times as many Indian children as non-Indian children in adoptive homes, and Indian children were placed in foster care at a rate almost ten times higher than that of non-Indian children." *Id.* at 104-05.

families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."[9]

■■ Under ICWA, a voluntary termination of parental rights by an Indian parent must be executed in writing, recorded before a judge, and accompanied by the judge's certification that the terms and consequences of the consent were fully explained and fully understood by the Indian parent.[10] Section 1913(c) of ICWA further provides:

> In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.[11]

The Washington Supreme Court addressed ICWA for the first time in *In re Adoption of Crews*.[12] The birth mother in *Crews* voluntarily consented to the termination of her parental rights and to an adoptive placement under state law.[13] After a final order terminating the parent-child relationship had been entered, Crews attempted to revoke her consent on the grounds that ICWA, and not state law, governed the adoption.[14] The *Crews* court ultimately determined that ICWA did not apply, but the court stated in dicta that even if it were applicable, "its provisions would not invalidate the termination of Crews' parental rights" because under ICWA (25 U.S.C. § 1913(c)), a parent's right to withdraw consent to termination expires "once a final

---

[9] 25 U.S.C. § 1902.

[10] *See* 25 U.S.C. § 1913(a).

[11] 25 U.S.C. § 1913(c).

[12] 118 Wn.2d 561, 566, 825 P.2d 305 (1992).

[13] *See id.* at 564.

[14] *See id.* at 565-66.

decree of termination is entered even if the adoption is not yet final."[15]

Although the *Crews* court limited its ruling to "the narrow circumstances presented by the specific facts of the case," the court cited with approval the interpretation of § 1913(c) first set forth by the Alaska Supreme Court in *In re J.R.S.*[16] The *J.R.S.* court construed the provision as follows:

> Section 1913(c) applies to two kinds of proceedings: to voluntary proceedings for termination of parental rights and to voluntary proceedings for the adoptive placement of Indian children. The consent it refers to may be one of two kinds: a consent to termination of parental rights or a consent to adoptive placement. A consent to termination may be withdrawn at any time before a final decree of termination is entered; a consent to adoption at any time before a final decree of adoption. If Congress had intended consents to termination to be revocable at any time before entry of a final decree of adoption, the words "as the case may be" would not appear in the statute. . . .[17]

Although the *Crews* court's interpretation of § 1913(c) is dicta, its logic is sound. And, other courts that have considered the issue have unanimously adopted the interpretation set forth in *J.R.S.*[18] Therefore, we conclude that in the context of proceedings for voluntary termination of parental rights, ICWA does not give a birth mother the right to revoke her consent after a final order of termination has been entered.

We reject Damon's argument that the proceeding during which she executed her consents to termination and adoption "cannot be exclusively characterized as either a volun-

---

[15] *Id.* at 571. The court did not address an Indian parent's statutory right to revoke consent under Washington law.

[16] 690 P.2d 10, 12-13 (Alaska 1984).

[17] *Id.* at 13-14.

[18] *See In re Kiogima,* 189 Mich. App. 6, 9-13, 472 N.W.2d 13 (1991), *cert. denied,* 502 U.S. 1064 (1992); *B.R.T. v. Executive Dir. of the Soc. Servs. Bd.,* 391 N.W.2d 594, 599 (N.D. 1986).

tary termination proceeding or an adoptive placement proceeding." ICWA defines "adoptive placement" as "the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption."[19] The proceeding during which Damon consented to the termination of her parental rights could not have resulted in a final decree of adoption.[20] Rather, it could and did result only in entry of an order terminating the parent-child relationship.[21] We conclude that the proceeding can be characterized only as a voluntary termination proceeding, and not an adoptive placement proceeding. Accordingly, under § 1913(c), Damon's right to revoke her consent expired upon the entry of the final order terminating her parental rights.

*Chapter 26.33 RCW*

We must next decide whether Washington law affords an Indian birth mother greater protection than ICWA, entitling her to revoke her consent to termination after entry of an order of termination, but prior to entry of an adoption decree. ICWA states that if applicable state law "provides a higher standard of protection to the rights of the parent . . . of an Indian child," the stricter state standard controls.[22] Chapter 26.33 RCW governs relinquishment[23] and adoption proceedings in Washington. The legislature amended these laws in 1987 to comply with ICWA.[24]

---

[19] 25 U.S.C. § 1903(1)(iv).

[20] Proceedings resulting in a final decree of adoption are governed by RCW 26.33.150, which provides that "[a]n adoption proceeding is initiated by filing with the court a petition for adoption." RCW 26.33.150(1). A petition for adoption was never filed in the proceedings at issue here.

[21] *See* RCW 26.33.090(4).

[22] 25 U.S.C. § 1921.

[23] "The statutes speak of 'relinquishment' when parental rights are terminated by the voluntary consent of a birth parent. When parental rights are terminated without consent, the statutes speak of 'termination.'" 3 WASH STATE BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK, § 60.5(5) (2d ed. 2000).

[24] *See* LAWS OF 1987, ch. 170; S.B. REP. 2SHB 480 at 1-2, 50th Leg. (Wash. 1987); H.B. REP. 2SHB 480 at 1-2, 50th Leg. (Wash. 1987).

Revocation of an Indian parent's consent to adoption in Washington is governed by RCW 26.33.160(4)(h), which provides in part:

> In the case of a consent to an adoption of an Indian child, no consent shall be valid unless the consent is executed in writing more than ten days after the birth of the child and unless the consent is recorded before a court of competent jurisdiction pursuant to 25 U.S.C. Sec. 1913(a). *Consent may be withdrawn for any reason at any time prior to the entry of the final decree of adoption*[.][25]

Appellants maintain that this provision gives Damon the right to revoke her consent to the termination of her parental rights at any time prior to the finalization of M.D.'s adoption, even after entry of a final order of termination. Respondents and amicus counter that the provision does not apply to withdrawals of consent to termination of parental rights, but only to withdrawals of consent to adoption. Respondents and amicus also argue that entry of a final order of termination permanently cuts off a birth mother's parental rights, thus prohibiting the natural parent from revoking her consent to either termination or adoption. We agree with respondents and amicus.

■ We apply general principles of statutory construction in giving meaning to the provision. If the language of a statute is plain and unambiguous, the statute's meaning must be derived from the statutory language itself.[26] However, if the language of the statute is susceptible to more than one reasonable interpretation, an ambiguity exists and we attempt to give effect to the intent and purpose of the legislature.[27] To discern the legislature's intent, we look to the legislative history of the statute as well as to other statutes dealing with the same subject matter.[28] We

---

[25] (Emphasis added.)

[26] *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998).

[27] *See id.*

[28] *See id.*

attempt to construe the statute so that no portion of it is rendered meaningless or superfluous.[29]

In interpreting the provision Damon relies on, two questions must be addressed. First, we must decide whether RCW 26.33.160(4)(h) applies to withdrawal of consents to *termination*. Second, we must determine whether the provision allows an Indian parent to revoke his or her consent after an order terminating parental rights has been entered but before the adoption is finalized.

I. Does RCW 26.33.160(4)(h) Apply to Revocations of Consent to Termination?

██ We hold that the language of RCW 26.33.160(4)(h) is plain and unambiguous. This provision speaks only to "consent to an adoption of an Indian child," and does not purport to address an Indian parent's right to withdraw a consent to termination of parental rights. The provision is consistent with the revocation rights granted by ICWA, and does not afford Indian parents any rights beyond those set forth in 25 U.S.C. § 1913(c). We are not convinced by appellants' argument that consent to adoption and consent to termination are one and the same under Washington law.

First, we reject appellants' contention that Washington law makes no distinction between consents to adoption and consents to termination of parental rights. Appellants correctly note that in voluntary termination proceedings, RCW 26.33.080 requires the natural parent to file a petition to relinquish custody of the child and directs that the parent's "consent to adoption *shall* accompany the petition."[30] But it does not necessarily follow that consent to adoption is the equivalent of consent to termination. Rather, RCW 26-.33.090(3), the provision governing hearings on petitions for relinquishment, makes an explicit distinction between

---

[29] *See State v. Glas*, 106 Wn. App. 895, 902, 27 P.3d 216 (2001).

[30] RCW 26.33.080 (emphasis added).

consents to relinquishment and consents to adoption in the context of Indian adoptions.[31]

In addition, a review of the legislative history of this section indicates that the legislature recognized a distinction between consents to termination and adoption in the context of Indian adoptions. As stated above, the legislature amended our adoption code in 1987 to bring Washington law into compliance with ICWA.[32] RCW 26.33.160(4) was added as part of these 1987 revisions.[33] Section 1903(1) of ICWA defines four discreet legal proceedings and makes a clear distinction between the "termination of parental rights" and the "adoptive placement" of an Indian child. In passing ICWA, Congress recognized that these terms "may not be current in the legal lexicon of domestic relations and might have some different or overlapping meaning in normal usage."[34] To avoid confusion, Congress stated that "[t]he terms are intended to have the meaning given to them in [§ 1903(1)]."[35] Although Washington's adoption code does not define "termination" or "adoptive placement," ICWA states that "termination of parental rights" means "any action resulting in the termination of the parent-child relationship," and that "adoptive placement" means "the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption."[36] Because the legislature intended to conform Washington law with ICWA in passing RCW 26.33.160(4)(h), we

[31] RCW 26.33.090(3) states: "However, if the child is an Indian child, the court shall require the consenting parent to appear personally before a court of competent jurisdiction to enter on the record his or her *consent to the relinquishment or adoption*." (Emphasis added.)

[32] *See* S.B. REP. 2SHB 480 at 1-2, 50th Leg. (Wash. 1987); H.B. REP. 2SHB 480 at 1-2, 50th Leg. (Wash. 1987). There is no indication that the legislature, in the 1987 amendments, intended to give Indian parents additional rights beyond those granted by ICWA.

[33] *See* LAWS OF 1987, ch. 170, § 7(4)(g).

[34] H.R. REP. No. 95-1386, at 20 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7542.

[35] *Id.*

[36] 25 U.S.C. § 1903(1)(ii), (iv).

can only conclude that "consent to adoption," as it is used in that subsection, is not the equivalent of consent to termination of parental rights. To hold otherwise would require us to ignore the distinctions between relinquishment, termination, and adoption set forth in both the Washington adoption code and ICWA.

We also disagree with appellants' assertion that treating consent to termination and consent to adoption as separate and distinct consents will render RCW 26.33.160(4)(h) meaningless. Appellants essentially argue that revoking one's consent to adoption can have no practical effect unless in doing so, one is also revoking one's consent to the termination of the parent-child relationship. It is true that the Washington Legislature has provided a means by which an Indian parent may revoke consent to adoption, but has not adopted a similar provision allowing for revocations of consent to termination. However, as discussed above, ICWA allows an Indian parent to revoke his or her consent to termination "at any time prior to the entry of a final decree of termination."[37] Thus, reading Washington law in conjunction with ICWA, an Indian parent is entitled to revoke his or her consent to termination at any time prior to the entry of a final order of termination.

II. Does RCW 26.33.160(4)(h) Allow an Indian Parent to Revoke His or Her Consent to Adoption After Entry of an Order Terminating Parental Rights but Before Entry of a Final Adoption Decree?

We hold that RCW 26.33.160(4)(h) does not give an Indian parent the right to revoke his or her consent to adoption following entry of a final order of termination. RCW 26.33.130 provides:

> An order terminating the parent-child relationship divests the parent and child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other

---

[37] 25 U.S.C. § 1913(c).

except past-due child support obligations owed by the parent.[38]

This provision goes on to state:

> The parent or alleged father whose parent-child relationship with the child has been terminated is not thereafter entitled to notice of proceedings for the adoption of the child by another, nor has the parent or alleged father any right to contest the adoption or otherwise to participate in the proceedings unless an appeal from the termination order is pending or unless otherwise ordered by the court.[39]

The obvious purpose of a termination order is to permanently and unassailably bring an end to the parent-child relationship. Construing RCW 26.33.160(4)(h) to allow a natural parent to withdraw his or her consent to adoption or termination after entry of a termination order would require us to ignore the clear mandate of RCW 26.33.130. The only way to give effect to both RCW 26.33.160(4)(h) and RCW 26.33.130 in the context of adoption proceedings involving an Indian child is to interpret the former provision as allowing withdrawal of consent to adoption before entry of an adoption decree, but not after entry of a termination order.

Appellants argue that under this interpretation, there would be no circumstance under which a consenting Indian parent could take advantage of the right to revoke referenced in RCW 26.33.160(4)(h). Appellants are mistaken. First, RCW 26.33.090(1) provides that the hearing on a petition for relinquishment "may not be held sooner than forty-eight hours after the child's birth or the signing of all necessary consents to adoption, whichever is later." Because an order of termination cannot be entered until after the hearing, an Indian parent always has a minimum of 48 hours to exercise the revocation right granted by RCW 26.33.160(4)(h).[40] Second, appellants apparently ignore the

---

[38] RCW 26.33.130(2).

[39] RCW 26.33.130(4).

[40] *See* RCW 26.33.090. This time period may be significantly longer, depending on when the petition is filed and/or the court schedules the hearing on the petition.

fact that under Washington's adoption code, a petition for relinquishment may be consolidated with a petition for adoption.[41] Thus, in many cases there is a combined hearing after which the court simultaneously enters both an order of termination and an adoption decree.[42] Under this scenario, there is no time prior to entry of an adoption decree where an Indian parent would be precluded from exercising the right to withdraw his or her consent to the adoption. Presumably, in enacting RCW 26.33.160(4)(h), the legislature did not contemplate a situation where, as here, there is a large gap in time between entry of an order of termination and entry of a final decree of adoption. Indeed, counsel informed us during oral argument that this is a very unusual situation because final adoption decrees are usually entered within six months. The rules of statutory construction prohibit us from adopting an interpretation of RCW 26.33.160(4)(h) that would effectively require us to write RCW 26.33.130 out of the statute.

We also note that construing RCW 26.33.160(4)-(h) to permit revocation of consent to adoption after entry of a final order of termination would be contrary to the best interests of the child and the strong policy favoring finality in adoption proceedings. As this court has stated, "statutes should be construed to effect the legislative purpose and to avoid unlikely, strained or absurd results."[43] The legislature has provided that in applying the adoption statute, "[t]he guiding principle must be determining what is in the best interest of the child."[44]

As respondents and amicus point out, allowing an Indian parent to revoke consent to termination after an order terminating parental rights has been entered would con-

---

[41] *See* RCW 26.33.030(2) ("A petition under this chapter may be consolidated with any other petition under this chapter. A hearing under this chapter may be consolidated with any other hearing under this chapter.").

[42] *See* RCW 26.33.090, .240.

[43] *State v. Landrum*, 66 Wn. App. 791, 797, 832 P.2d 1359 (1992).

[44] RCW 26.33.010.

vert a final order of termination to a conditional one. Under appellants' theory, an order terminating the parental rights of an Indian parent would be meaningless because the parent would retain the right to have the order vitiated at any time for any reason until the final adoption order is entered. As this case shows, it can take years before an adoption becomes final. Allowing a birth mother whose parental rights have been terminated to reclaim her child at any time before the adoption is finalized would undoubtedly conflict with the best interests of the child, especially where, as here, the child has been living in the preadoptive home for nearly all of her life. And, as the CASA points out, if RCW 26.33.160(4)(h) is construed to apply in cases like Damon's, parents facing involuntary termination trials would have an end run around the law because they could opt to voluntarily relinquish their rights and then withdraw their consent at any time prior to the child's adoption. Because it is highly improbable that the legislature intended such results when it enacted RCW 26.33.160(4)(h), we cannot adopt the interpretation Damon and DSHS urge.

### Enforceability of Consent Form

Because RCW 26.33.160(4)(h) does not give Damon the right to revoke her consent to the termination of her parental rights to M.D., we must next decide whether the "Relinquishment of Custody and Consent to Adoption/Termination" form that Damon signed is enforceable. The language of the consent form is ambiguous and misleading. The form stated in part:

> 4.4 I understand that my decision to relinquish the child is an extremely important one. I understand that after I sign this consent in Court and it is approved by the Court, an order permanently terminating my parental rights will be entered. *The termination order will take away all my legal rights and obligations as a parent except for my rights to revoke this consent as set forth in Paragraphs 4.10 and 4.11 below. . . .*

. . . .

4.6 I hereby consent to termination of my parental rights and request the Court to enter an order permanently terminating all of my parental rights to the child. I further consent to the child's adoption and also authorize the Department of Social and Health Services to consent, on my behalf, to the child's adoption.

. . . .

4.8 I understand that the legal effect of an order permanently terminating my parental rights will be to divest me of all legal rights and obligations with respect to the child, except for past due child support obligations with respect to the child, *and except for my rights to revoke this consent as set forth in 4.10 and 4.11 below. . . .*

. . . .

*4.10 I understand that I have the right to withdraw and revoke this consent for any reason and at any time before the Court enters an adoption decree regarding the child.* I understand that an Order of Termination will not be entered until a minimum of forty-eight (48) hours after I sign the consent in Court. I also understand that if I wish to revoke my consent, I must revoke it in one of the following ways: (i) written revocation may be delivered or mailed to the Clerk of the Court and such revocation will be effective if received by the Clerk of the Court prior to entry of the adoption decree or (ii) revocation may be made orally to the Court at any time prior to entry of the adoption decree.

4.11 I understand that, if I withdraw and revoke this consent before the Court enters an adoption decree regarding the child, I have the right to have the child promptly returned to my custody unless the return of custody would likely cause imminent physical harm to the child or unless a court order

for foster care placement of the child has been entered.[45]

As discussed above, neither ICWA nor Washington law gives an Indian parent the right to revoke consent to termination after an order of termination has been entered. In contrast, paragraphs 4.4 and 4.8 of the form Damon signed could be interpreted to mean that an order of termination is subject to Damon's right to revoke her consent at any time prior to the entry of an adoption decree. In other words, the language of the consent form could have led Damon to mistakenly believe she was entitled to revoke her consents to termination and adoption after entry of the termination order.

 Damon argues she is entitled to rescind her consent to termination and adoption based on the doctrine of mutual mistake. A contract may be rescinded where "there is a clear bona fide mutual mistake regarding a material fact."[46] The language of the consent form Damon signed suggests that both Damon and DSHS were mistaken about the nature of Damon's right to revoke her consent.[47] But in order to justify recission, Damon must also establish (1) that the mistake was one of fact and (2) that the mistake was material.

 Damon concedes that absent fraud or deceit, a mistake of law is not grounds for avoidance of a contract.[48] However, Washington courts treat mistakes about a party's "antecedent rights" which form the basis of an agreement as mistakes of fact which do constitute grounds for avoid-

---

[45] (Emphasis added.)

[46] *Simonson v. Fendell*, 101 Wn.2d 88, 92, 675 P.2d 1218 (1984).

[47] As discussed above, the form stated: "I further understand that after my parental rights are terminated, I am not thereafter entitled to notice of proceedings regarding the child's adoption, nor do I.have any right to contest the adoption or otherwise participate in the child's adoption proceedings, *except as set forth in Paragraphs 4.10 and 4.11 below*." (Emphasis added.)

[48] *See Schwieger v. Harry W. Robbins & Co.*, 48 Wn.2d 22, 24, 290 P.2d 984 (1955).

ance.[49] In *In re Estate of Geer*,[50] we found a mutual mistake of fact where the parties relied on erroneous advice from an attorney in executing a settlement agreement. The attorney in *Geer* incorrectly advised the parties that under Washington law, the decedent's surviving wife was entitled only "to the joint bank accounts in which she held a right of survivorship and an undivided one-half interest in the community property."[51] A Washington statute actually gave the surviving spouse the right to all of the community property and to one-half of the separate property.[52] The court determined that the parties "were mutually mistaken as to their antecedent rights which formed the basis of the agreement" and voided the agreement.[53] As in *Geer*, both Damon and DSHS were mistaken about Damon's statutory right to revoke her consent and the language of the consent form evinces that misunderstanding. Therefore, we conclude that the parties' mistake in this case was one of fact.

In determining whether the mistake was material, we consider "whether the contract would have been entered into had the parties been aware of the mistake."[54] To satisfy this test, Damon must show that she would not have signed the consent form had she known that she would not be entitled to withdraw her consent after an order terminating her parental rights was entered. Because there is not sufficient evidence in the record before us to determine whether or not Damon can meet this burden, we remand the case to the trial court to resolve this issue.

Reversed and remanded for further proceedings.

GROSSE and KENNEDY, JJ., concur.

---

[49] *In re Estate of Geer*, 29 Wn. App. 822, 825, 629 P.2d 458, *review denied*, 96 Wn.2d 1004 (1981).

[50] *Id.*

[51] *Id.* at 824.

[52] *See id.*

[53] *Id.* at 826.