[No. 45162-6-I.    Division One.    February 28, 2000.]

*In the Matter of the Interest of* J., New Hope Child & Family Agency, *Appellant*, and Earnest Campbell, et al., *Respondents*.

*Albert G. Lirhus, Paul F. Eagle*, and *Melanie A. Maxwell* of *Dubuar, Lirhus & Engel*, for appellant.

*Charles S. Hamilton III*, for respondents.

*Christine O. Gregoire, Attorney General,* and *Sheila M. Huber, Assistant,* on behalf of Department of Social and Health Services, amicus curiae.

AGID, A.C.J. — This case concerns the adoption of J., who was placed as an infant with Earnest and Charis Campbell by the New Hope Child & Family Agency, the adoption agency with custody over J. Following an incident of domestic violence in the Campbell home almost one year later, New Hope withdrew its consent to the Campbells' petition to adopt J. and moved her to a new pre-adoptive placement. The Campbells subsequently petitioned the superior court to dispense with New Hope's consent and finalize the adoption. Instead of either denying or approving the adoption, the trial court retained jurisdiction and stayed its decision for 14 months, concluding that the adoption was in J.'s best interest *if* the Campbells successfully completed a counseling regimen during that time. We hold that the trial court did not have the authority to continue the adoption proceedings for this reason or for such a protracted amount of time and remand for an immediate final decision on the Campbells' adoption petition.

## FACTS

J. was born on September 13, 1997. Shortly after her birth, New Hope obtained temporary custody of J. and on September 27, 1997, placed her with Earnest and Charis Campbell "for the purpose of adoption."[1] After obtaining New Hope's consent, the Campbells filed a petition for

---

[1]Later, on February 18, 1998, New Hope gained permanent custody of J. when both of J.'s birth parents relinquished their parental rights.

adoption on August 5, 1998.[2] On that same day, however, an incident of domestic violence occurred in the Campbell household. J. was present but not directly involved or injured. New Hope learned of the incident a little over a week later when Charis called New Hope to say that she and J. had gone to Phoenix to stay with relatives.

On August 25, 1998, New Hope revoked its consent to the Campbells' adoption of J. and informed them in a letter from Beth Mizell, a New Hope adoption counselor, that while New Hope did not intend to disrupt placement, they were halting proceedings to finalize the adoption:

> At the time you reach a resolution to the problems you are currently facing, and have a clear picture regarding your futures, New Hope will re-evaluate and make a decision regarding [J.'s] placement, based upon what is in her best interest. . . .

In the meantime New Hope arranged for a Phoenix-based agency to conduct home visits to monitor J.'s well-being. Charis and J. remained with relatives until mid-November when they moved into their own home. Beginning in mid-September, Earnest visited Charis and J. in Phoenix at least every other weekend and, New Hope later learned, moved in with Charis and J. after they left the relatives' home. On January 5, 1999, Diane Lostrangio, New Hope's Director of Domestic Adoptions and Mizell's supervisor, advised the Campbells by letter that "J. must reside with Mrs. Campbell at this time with Mr. Campbell maintaining a separate residence":

> It is New Hope's expectation and requirement that you will each continue to maintain separate residences with [J.] residing with Mrs. Campbell until our agency is in a position to make a permanent recommendation for [J.]. We are still in the process of obtaining pertinent information about the progress of counseling for you both as a couple. Once we have this, we

---

[2]RCW 26.33.160 requires the consent of the agency with custody over the child before a court may finalize an adoption. A court may dispense with this requirement only if it determines "by clear, cogent and convincing evidence that the proposed adoption is in the best interests of the adoptee." *See* RCW 26.33.170.

will have to consult with our licenser and with an attorney since we cannot make a recommendation as an agency without their input.

On February 3, 1999, New Hope petitioned the court for authority to take physical custody of J. with the help of Phoenix law enforcement officials, basing its request on the domestic violence incident in August and the Campbells' continuing to live together despite New Hope's admonition against it. The superior court granted the petition. On February 4, 1999, the Campbells were served with the order, and J. was taken from their home without notice and placed in temporary custody with foster parents in Seattle.[3]

The Campbells then petitioned the superior court to dispense with the agency's consent and finalize their adoption of J. The issue during the three-day trial was whether there is clear, cogent and convincing evidence that it is in J.'s best interest to be adopted by the Campbells.[4] Instead of answering that question, the court issued a conditional decision, concluding that "[i]t is in the best interest of [J.] that she be adopted by the Campbells *if* Mr. Campbell individually and the Campbells as a couple can satisfactorily pursue counseling and treatment over the next 14 months." Accordingly, the court deferred its decision on both issues until November 16, 2000, and ordered that J. be returned to the Campbells in the meantime. New Hope's request for an emergency stay allowing J. to remain with her foster parents was granted, but the court denied its motion for reconsideration.

## DISCUSSION

■ Adoptions are purely statutory and the procedures

---

[3] J. has remained with these foster parents to this day.

[4] In their brief the Campbells claim that the purpose of the hearing was only to decide whether to dispense with New Hope's consent. Nothing in the record supports this, and the court's order makes clear that it had before it both finalizing the adoption and dispensing with agency consent.

must be strictly followed.[5] In a statutory proceeding, the jurisdiction and authority of the courts are prescribed by legislative enactment, and the court does not have any power other than that inferred from a broad interpretation of the statutes.[6] The propriety of an adoption court's rulings must be measured by the statutory language.[7] To initiate adoption proceedings, a "prospective adoptive parent" may file a petition for adoption.[8] When, as here, an agency has custody of the child, its consent is required for the adoption unless the court determines by clear, cogent, and convincing evidence that the proposed adoption is in the best interest of the child.[9] RCW 26.33.240 gives the court authority to grant or deny the adoption based on the best interest of the adoptee and provides in pertinent part:

> (3) If the court determines, after review of the petition, replacement and post-placement reports, and other evidence introduced at the hearing, that all necessary consents to adoption are valid or have been dispensed with . . . and that the adoption is in the best interest of the adoptee . . . the court shall enter a decree of adoption pursuant to RCW 26.33.250.

> (4) If the court determines the petition should not be granted because the adoption is not in the best interest of the child, the court shall make appropriate provision for the care and custody of the child.

The scope and nature of the trial court's powers as outlined in this section are at the heart of this appeal. New Hope contends that trial courts must either grant or deny the adoption petition based on the best interest of the adoptee at the time of the hearing. It argues that the trial court does not have the authority to enter a "conditional adoption" and effectively stay the adoption proceedings, as

---

[5]*In re Adoption of Parsons*, 76 Wn.2d 437, 440-41, 457 P.2d 544 (1969).

[6]*State v. Womack*, 82 Wn.2d 382, 386, 510 P.2d 1133 (1973).

[7]*In re Adoption of Henderson*, 97 Wn.2d 356, 358, 644 P.2d 1178 (1982).

[8]RCW 26.33.150(1).

[9]RCW 26.33.160(1)(c); RCW 26.33.170.

it did in this case. We agree. The present tense directive in the statute dictates that the trial court either grant or deny the adoption at the time of the hearing. We recognize that under narrow circumstances not present here, the court may need to continue the proceedings for a short time to, for example, wait for an additional report or witness who could not be present at the hearing or to consider its decision. But, absent such circumstances, RCW 26.33-.240 requires the court to make a final decision at the time of the hearing.

■ Our reading of the statute is consistent with the overriding purpose of Washington's adoption statute: "determining what is in the best interest of the child."[10] We agree with amicus Department of Social and Health Services that delay in adoption proceedings is contrary to the best interests of children, as this case illustrates. Fourteen months is a long time in the developmental life of any child, especially a toddler, and the statute does not contemplate placing a child's final placement and adoption on hold for over a year. Delay in adoption proceedings, as J.'s case also illustrates, also poses the significant risk that the adoptee will be required to reside with and adjust to numerous sets of parents, thus increasing the potential for developing an attachment disorder. As Michele Gentry Hinz, court-appointed guardian ad litem for J., stated at oral argument, although J. has fared amazingly well after being required to adjust on three separate occasions to three different "mothers," attachment disorder is a serious threat to a child's normal development and thus a strong voice in favor of requiring a timely final decision on an adoption petition. The ramifications of delay are further exacerbated here by the fact that the family with whom J. is currently placed also wants to adopt her, and New Hope is prepared to consent to that adoption.

Any significant delay in the proceedings also upsets the balance of duties between adoption agencies and the courts.

---

[10]RCW 26.33.010.

The Washington Supreme Court has commented on the need for collaboration between courts and agencies involved in adoption proceedings as reflected in the power and responsibilities imposed on *both* entities by the Legislature:

> *[O]nce the court makes the determination* that it is for the best interest and welfare of the child that such child be committed to the custody of the particular agency for adoptive purposes, *then it would seem logically compelling that the agency should be given every reasonable opportunity*, and in this respect *should be supported by the courts* in its programming or actions designed to find proper adoptive parents and to place the child *permanently* with such parties for adoption.

> The particular area in public administration of child welfare requires the closest of cooperation and understanding between the courts and the approved agencies. Neither can function effectively in the best interests of the large number of children in need of public child care services without the help and understanding of the other.

> In our complex society, neither the courts nor the social agencies can do the work alone. It involves a mutual responsibility rather than a distinct and separate one. It is a responsibility and a function that must be understood and shared by the courts and the social agencies.[11]

Keeping this collaborative mandate in mind, the 14-month delay in this case interfered with the agency's responsibilities for an unacceptable amount of time. When an agency assumes custody of a child, RCW 26.33.090(5) gives it authority to place that child for adoption. The agency performs many functions in adoption proceedings, "including conducting preplacement studies to evaluate the fitness of prospective adoptive parents, choosing appropriate adoptive parents for the specific child, introducing the child into the adoptive home, and preparing a postplacement report

---

[11]*In re Adoption of Reinius*, 55 Wn.2d 117, 127-28, 346 P.2d 672 (1959).

to be used by the court."[12] There is a good reason why the Legislature requires agency consent to an adoption and allows one to proceed without it only if there is a "clear, cogent, and convincing" showing that the adoption is in the child's best interest. Adoption agencies play a crucial role in adoption proceedings, and the Legislature has given them primary responsibility for the child's pre-adoption welfare. The court's conditional decision here effectively rendered the agency powerless to proceed with J.'s adoption for 14 months. As such, it was contrary to the requirement that there be cooperation between Washington's courts and adoption agencies.

We must reject the Campbells' reliance on *In re Adoption of Henderson*,[13] a case involving the question whether a court had inherent power to enter an interlocutory adoption decree when the statute required that any adoption decree be final. The Campbells point out that the *Henderson* court noted "[t]he court has discretion, of course, to delay the entry of its decree where the circumstances warrant it, but that is not what was done here."[14] But the court cited no authority for this statement, which was dicta in any event, and *Henderson* is not dispositive here.

We also reject New Hope's claim that the continuance was improper because it was based on ethnicity or race. New Hope is correct that RCW 26.33.045 provides that "[a]n adoption shall not be delayed or denied on the basis of the race, color, or national origin of the adoptive parent or the child involved." But while the court relied partly on race in concluding that the Campbells were better suited to adopt J. than the family with whom she was living at the time of the hearing, race was not the reason it delayed its decision.

Finally, we hold that the trial court properly denied New

---

[12]Shannon E. Phillips, Note & Comment, *Preventing Bidding Wars in Washington Adoptions: The Need for Statutory Reform After* In Re Dependency of G.C.B., 70 Wash. L. Rev. 277, 292 (1995).

[13]97 Wn.2d 356, 644 P.2d 1178 (1982).

[14]*Id.* at 358.

Hope's motion for reconsideration. New Hope contends that the trial court violated CR 59(a) when it denied the motion because "no evidence exists to support placement of [J.] at risk[,] . . . '[s]ubstantial justice' was not done by placing [J.] into known risk[, and] [n]o 'reasonable inference' from the evidence, and no legal justification can support placing [J.] into risk or harm's way." The trial court considered complicated and conflicting evidence and testimony during the three-day trial and rendered its findings and conclusions accordingly. New Hope fails to cite any authority for an ironclad rule that a child may never be placed or adopted into a home where domestic violence has occurred or where some risk of domestic violence exists. The trial court did not abuse its discretion when it denied New Hope's motion for reconsideration.

In sum, we hold that the language of the adoption statutes, the problems created by delay in adoption proceedings, and the legislative intent that courts and adoption agencies work closely together throughout adoption proceedings all require that trial courts issue timely final orders after the hearing on an adoption petition. While a short delay may be appropriate in limited circumstances, a 14-month continuance is not. We remand to the trial court for a final decision on the Campbells' petition within 30 days from the date of this opinion. In the event the trial court determines that it should consider additional evidence, the trial court must commence a hearing within 30 days from the date of this opinion and issue a final order immediately following it.[15]

Remanded for further proceedings consistent with this opinion.

WEBSTER and ELLINGTON, JJ., concur.

---

[15]We allow the trial court to consider additional evidence here only because there was no judicial interpretation of RCW 26.33.240 at the time of the original hearing on the Campbells' petition. Future cases are to be decided based on the evidence available to the court at the conclusion of the hearing.