[No. 48227-1-I.   Division One.   February 18, 2003.]

*In the Matter of the Marriage of* RENE L. FURROW, *Appellant*, and WILLIAM D. FURROW, *Respondent*.

*G. Olaf Hansen* (of *Magnuson Lowell, P.S.*), for appellant.

*William D. Furrow*, pro se.

*Thomas J. Alexiou*, for respondent.

*Christine O. Gregoire, Attorney General,* and *Stephen H. Hassett* and *Michelle L. Ressa Weber, Assistants*, on behalf of the Office of the Attorney General, amicus curiae.

*Robert D. Welden* and *Peter S. Lineberger* on behalf of the Family Law Section of the Washington State Bar Association, amicus curiae.

KENNEDY, J. — In the course of a parenting plan modification action brought some three years after the marriage of the parties to this appeal had been dissolved, appellant Rene L. Taylor signed a voluntary relinquishment of her parental rights with respect to the children born of her marriage to respondent William D. Furrow. On March 5, 1999, the trial court entered an order terminating Ms. Taylor's parental rights.[1] No appeal was taken from the order. In January 2001, Ms. Taylor filed a motion seeking to vacate the order, contending that the order is void and should be vacated under CR 60(b)(5), or in the alternative that the irregularity of the proceedings requires vacation of the order under CR 60(b)(11). The trial court denied the motion to vacate, and Ms. Taylor appeals. We reverse and remand for entry of an order vacating the order terminating

---

[1] The statutes governing termination of parental rights speak of "relinquishment" when parental rights are terminated by the voluntary consent of a birth parent, and "termination" when parental rights are terminated without consent. 3 WASH. ST. BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK § 60.5(5)(b) (2d ed. 2000). We have used the terms interchangeably in this opinion, in that the modification court proceeded outside the statutory scheme, and the record contains both a relinquishment signed by Ms. Taylor and an order terminating parental rights entered by the modification court.

Ms. Taylor's parental rights for irregularity in the proceedings, as authorized by CR 60(b)(11).

The modification court did not lack subject matter jurisdiction; thus, the order terminating Ms. Taylor's parental rights was not void. But notwithstanding the fact that Ms. Taylor signed a voluntary relinquishment of her parental rights, the modification court's departure from statutory procedures that are designed to serve the best interests of children, and not as a means for parents to avoid responsibility for their children, requires that the order be vacated under CR 60(b)(11). The parties' children were not represented by a guardian ad litem with respect to the relinquishment and termination of their mother's parental rights. Family Court Services was not consulted with respect to termination of the mother's parental rights, and the report that was prepared by Family Court Services for the modification action shows that the children loved their mother dearly and wanted to have a relationship with her.

An order terminating parental rights does far more than merely terminate the rights of a relinquishing parent. It deprives the children of their right to financial support from that parent, their right to the companionship and guidance of that parent, their right of inheritance from that parent, and their right to social security benefits in the event of that parent's death or disability. It is fundamentally wrong, and statutorily impermissible, to permit voluntary relinquishment of parental rights to serve as a means of resolving parenting disputes in a parenting plan modification action, even at the request of a relinquishing parent or by agreement of the parents, when none of the procedural safeguards of the dependency or adoption statutes intended to serve the best interests of children are in place. The procedural irregularity here is more substantial than a mere error of law that can be remedied only by a timely appeal of a party to the litigation. Vacation of the order under CR 60(b)(11) is an appropriate remedy in this case; indeed, it is the only remedy that will protect the rights of the children in this case, who have not been adopted by a stepparent in the interim.

## FACTS

On July 19, 1996, the marriage of Rene Taylor and William Furrow was dissolved by decree of the King County Superior Court. A parenting plan was entered on the same day, placing the parties' three minor children in Ms. Taylor's primary residential care. On December 17, 1997, Mr. Furrow petitioned to modify the parenting plan, and for a temporary parenting plan and child support. He also obtained an ex parte temporary restraining order against Ms. Taylor.

On January 21, 1998, the trial court concluded that an adequate threshold showing had been made to permit the modification action to go forward and entered a temporary parenting plan granting Mr. Furrow primary residential care of the children, pendente lite. The matter was referred to Family Court Services to investigate and recommend a new parenting plan for the parties.

In January 1999, Family Court Services filed its report, recommending that Mr. Furrow continue to have primary residential care of the children, that the children have supervised visits with Ms. Taylor, and that specific guidelines for all telephone contacts between the mother and the children be established.

Ms. Taylor subsequently decided that the ongoing hostility between the parents was harming the children. After consultation with her attorney, she decided to voluntarily relinquish her parental rights. Mr. Furrow agreed to this. Neither party asked Family Court Services to evaluate the proposal. Ms. Taylor's attorney prepared a relinquishment and Ms. Taylor signed it. Her attorney also prepared proposed findings of fact and an order terminating Ms. Taylor's parental relationship with the children. Without first appointing a guardian ad litem for the children, the trial court entered the findings and termination order on March 5, 1999. The findings state that the best interests of the children would be served by the relinquishment of parental rights, in that the Family Court Services

parenting evaluation showed that Ms. Taylor had "substantial issues which are not in the children's best interest . . . ." Clerk's Papers at 317. The modification action was dismissed. No appeal was taken from the order terminating Ms. Taylor's parental rights.

On April 21, 2000, Mr. Furrow sought and obtained a temporary protection order against Ms. Taylor because she was continuing to have contact with the children, admittedly sometimes with his consent, but at other times surreptitiously. A court commissioner entered the temporary restraining order, but concluded, sua sponte, that the modification court did not have legal authority to issue an order terminating Ms. Taylor's parental rights.

Concerned by the commissioner's conclusion, Mr. Furrow sought a clarification from the modification court regarding the validity of the order terminating Ms. Taylor's parental rights. On August 24, 2000, the judge who entered the termination order "clarified" that the order had been entered pursuant to chapter 26.09 RCW and chapter 26.33 RCW and ruled that the order was valid.

On January 18, 2001, Ms. Taylor filed a motion and declaration for an order to show cause, contending that the order terminating her parental rights was void, and ought to be vacated under CR 60(b)(5) or 60(b)(11). On February 14, 2001, the superior court denied the motion to vacate. Ms. Taylor appealed.

Because this case raises significant legal and public policy issues that were not adequately addressed in the parties' briefs on appeal, we requested amicus briefs from the Office of the Attorney General and the Family Law Section of the Washington State Bar Association.[2] We take this opportunity to express our appreciation to both amici

---

[2] The Office of the Attorney General represents the Department of Social and Health Services in hundreds of cases each year involving relinquishment and termination of parental rights, adoption, and child support enforcement. The Family Law Section of the Washington State Bar Association, through its Executive Committee, is dedicated to the education of family law practitioners as to procedural and substantive principles of family law, and the best practices and ethical standards of that specialty.

for their thoughtful, thorough, and capable briefing of the procedural, legal, and public policy issues raised by this appeal. The contribution by amici of their valuable time and considerable legal expertise has been of great assistance to the court and is in accord with the highest ethical standards of the legal profession.

ANALYSIS

Subject Matter Jurisdiction: Chapter 26.09 RCW, the Marital Dissolution Statute

█ No provision in chapter 26.09 RCW permits a court to terminate parental rights in the course of a marital dissolution or a postdecree modification action. Even RCW 26.09.191, which allows a court to restrict a parent's time with a child based upon parental behavior that puts the child at risk, makes no reference to the possibility of termination of parental rights as a potential remedy for parental shortcomings. This being so, Ms. Taylor and amici urge this court to declare that the modification court lacked subject matter jurisdiction to enter the order terminating Ms. Taylor's parental rights, and that the order is, accordingly, void and subject to vacation under CR 60(b)(5). Upon motion and upon such terms as are just, the court may relieve a party or his or her legal representative from a final judgment for the reason that the judgment is void. CR 60(b)(5). Parties cannot confer subject matter jurisdiction on the court by agreement between themselves; a court either has subject matter jurisdiction or it does not; if it does not, any judgment entered is void, and is, in legal effect, no judgment at all. *In re Habeas Corpus of Wesley*, 55 Wn.2d 90, 93-94, 346 P.2d 658 (1959).

█ In *Marley v. Department of Labor and Industries*, 125 Wn.2d 533, 541, 886 P.2d 189 (1994), our Supreme Court adopted the requisites of a valid judgment set forth in *Restatement (Second) of Judgments* § 1 (1982). That section provides:

A court has authority to render judgment in an action when the court has jurisdiction of the subject matter of the action, as stated in § 11, and

(1) The party against whom judgment is to be rendered has submitted to the jurisdiction of the court, or

(2) Adequate notice has been afforded the party, as stated in § 2, and the court has territorial jurisdiction of the action as stated in §§ 4 to 9.

Section 11 of the *Restatement (Second) of Judgments* (1982) defines "subject matter jurisdiction." " 'A judgment may properly be rendered against a party only if the court has authority to adjudicate the *type of controversy* involved in the action.' " (Emphasis added by the *Marley* court, 125 Wn.2d at 539, to emphasize the importance of the phrase "type of controversy.") A tribunal does not lack subject matter jurisdiction solely because it may lack authority to enter a given order. *Id.* "A lack of subject matter jurisdiction implies that an agency has no authority to decide the claim at all, let alone order a particular kind of relief." *Id.*

A superior court proceeding solely under the marital dissolution statutes certainly lacks statutory authority to enter an order terminating parental rights. But it has the authority to terminate parental rights under chapter 26.33 RCW, the adoption statutes, and chapter 13.34 RCW, the dependency statutes. Moreover, RCW 26.12.010 provides:

Each superior court shall exercise the jurisdiction conferred by this chapter and while sitting in the exercise of such jurisdiction shall be known and referred to as the "family court." A family court proceeding under this chapter is: (1) Any proceeding under [Title 26 RCW] or any proceeding in which the family court is requested to adjudicate or enforce the rights of the parties or their children regarding the determination or modification of parenting plans, child custody, visitation, or support, or the distribution of property or obligations, or (2) concurrent with the juvenile court, any proceeding under Title 13 or chapter 28A.225 RCW.

And finally, the broad original jurisdiction of the superior court as provided in article IV, section 6 of the state

constitution "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court" encompasses proceedings to terminate parental rights. So it cannot be said that the modification court had no authority in this case to decide the matter of termination of parental rights at all, let alone to order that particular kind of relief, when acting under the appropriate statutes and procedures. We conclude that although the modification court committed egregious legal and procedural error by terminating Ms. Taylor's parental rights in the modification action without proceeding within the parameters of the adoption code, the order was not thereby rendered void.

Accordingly, notwithstanding the fact that the modification court lacked statutory authority under chapter 26.09 RCW to terminate Ms. Taylor's parental rights, the trial court did not err by refusing to vacate the termination order under CR 60(b)(5).

### Authority: Chapter 26.33 RCW, the Adoption Statute

Both amici contend, and we agree, that the modification court's authority to enter the order terminating Ms. Taylor's parental rights can have arisen in this case only under the adoption statute—the modification court did not purport to act under the dependency statute, and could not have properly done so, for there is no contention and nothing in the record to support the proposition that these children were dependent as defined in chapter 13.34 RCW. Clearly, however, the modification court did not proceed in accord with the statutory framework of the adoption statute. Ms. Taylor argues that this renders the order terminating her parental rights void. Amici contend that the modification court's failure to operate within the statutory framework of the adoption statute renders its order merely voidable. Amici are correct.

The adoption statute makes it crystal clear that our legislature did not intend to permit a parent to relin-

quish his or her parental rights unless the child is to be adopted by another, or placed in the care of the Department of Social and Health Services or an adoption agency. At the outset of the adoption chapter, RCW 26.33.010 states that

> [i]t is the intent of the legislature that this chapter be used *only* as a means for placing children in adoptive homes and not as a means for parents to avoid responsibility for their children *unless* the department, an agency, or a prospective adoptive parent is willing to assume the responsibility for the child.

(Emphasis added.) In furtherance of that intent, "relinquish" or "relinquishment" is defined as "the voluntary surrender of custody of a child *to the department, an agency, or prospective adoptive parents.*" RCW 26.33.020(11) (emphasis added). A parent's petition for relinquishment to the department or to an adoption agency "*shall*" be accompanied by a "written *consent to adoption.*" RCW 26.33.080(1) (emphasis added). A parent's petition for relinquishment to a prospective adoptive parent "*shall*" be accompanied by a "written *consent to adoption.*" RCW 26.33.080(2) (emphasis added). If the court approves the relinquishment petition by entering an order terminating the parent-child relationship, it "*shall* award custody of the child *to the department, agency, or prospective adoptive parent, who shall be appointed legal guardian. The legal guardian shall be financially responsible for support of the child until further order of the court.*" RCW 26.33.090(4). In this case, Ms. Taylor did not surrender her parental rights to the Department of Social and Health Services, or to an adoption agency, or to a prospective adoptive parent, and no agency or prospective adoptive parent consented to assume Ms. Taylor's custodial and financial responsibility for the children. Ms. Taylor's relinquishment was not accompanied by a written consent to adoption. Ms. Taylor stated in her consent to relinquishment that she desired "to permanently relinquish the children to their father, William Furrow." Clerk's Papers at 312. But the other biological parent is not one of the statutorily approved persons or entities to which a parent is permitted to relinquish his or her parental rights.

Adoption proceedings are purely statutory in nature, and the statute must be strictly followed. *In re Infant Child J.*, 99 Wn. App. 473, 476-77, 994 P.2d 279 (2000). Where the language of a statute is clear and unambiguous, its meaning must be derived from the statutory language itself. *In re Dependency of M.D.*, 110 Wn. App. 524, 534, 42 P.3d 424 (2002).

We discern no lack of clarity in the above-quoted provisions of the adoption statute. A parent simply is not permitted by chapter 26.33 RCW to relinquish her child into thin air, or even into the welcoming arms of the other biological parent, and walk away from his or her parental responsibilities—even if she thinks that by doing so, she will serve the best interests of the child by bringing an end to disruptive parental hostility that is in and of itself damaging to the child. To the extent that there may be any ambiguity whatsoever in the meaning of these statutes, however, the legislative history of the current adoption code shows indisputably that the legislature meant exactly what it said. The House Bill Report for HB 626, as reported by the House Committee on Judiciary on January 4, 1984 states in relevant part:

BACKGROUND:

. . . .

The adoption code was amended in 1979 to include provisions on terminating parental rights. . . .

Some of the 1979 amendments also permit parents to terminate their own parental rights without contemplating an adoption. This has resulted in children being made the responsibility of the state without its consent.

. . . .

SUBSTITUTE BILL: The existing adoption code is replaced by a reorganized code. The new adoption code retains the significant features of the current adoption code, but eliminates duplicative and contradictory provisions.

*Parents will be able to terminate their parental rights only if an agency or prospective adoptive parents are willing to accept responsibility for a child.*

(Emphasis added.) The reorganized code was ultimately enacted into law and became effective January 1, 1985. ' LAWS OF 1984, ch. 155, § 41.

Although the legislature's primary intent apparently was to prevent parents from terminating their parental rights without contemplating an adoption so that children would not become the responsibility of the State without its consent, the sweep of the legislation is broader than that. What was permissible under the 1979 code, relinquishment of parental rights without an accompanying consent to an adoption, is not permissible under the current code. Under the current adoption code, a parent may not simply relinquish her parental rights to the other parent, and walk away from her parental responsibilities. She may relinquish only to the Department of Social and Health Services, or to an adoption agency, or to a prospective adoptive parent who has consented to accept custody of the child, and that entity or person becomes financially responsible for the child until further order of the court. This makes sense, in terms of public policy. Under the 1979 amendments to the code, a parent who relinquished his or her parental rights to the other parent did not thereby render the child dependent upon the State without its consent. But if the other parent were to die during the child's minority, the child would legally become an orphan, without the benefit of social security benefits or other means of support from the relinquishing parent, and perhaps without such benefits from the deceased parent as well. Thus, a child in that situation would become dependent upon the State without the State's consent. Where a court fails to adhere to the statutory procedures set down in the current adoption code, that is, fails to replace the relinquishing parent with an entity or person willing to assume the custodial and financial obligations of the abdicating parent, the same thing could easily happen. *See* RCW 26.33.130(2) ("An order terminating the parent-child relationship divests the parent *and the child* of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each

other except past-due child support obligations owed by the parent.").

As is made clear by the language of RCW 26.33.010, the legislature intended to serve the best interests of children by making these reforms in the reorganized adoption code:

> The legislature finds that the purpose of adoption is to provide stable homes for children. Adoptions should be handled efficiently, but the rights of all parties must be protected. The guiding principle must be determining what is in the best interest of the child. *It is the intent of the legislature that this chapter be used only as a means for placing children in adoptive homes and not as a means for parents to avoid responsibility for their children unless the department, an agency, or a prospective adoptive parent is willing to assume responsibility for the child.*

(Emphasis added.) By permitting Ms. Taylor to relinquish her parental rights when no agency or prospective adoptive stepparent stood ready to assume her parental responsibilities, the modification court did not exceed its subject matter jurisdiction, but it clearly acted outside the statutory framework of the adoption statute, and in frustration of the clear intent of the legislature as expressed in that statute. We can assume only that the modification court had the 1979 adoption code in mind, and not the current reorganized adoption code, when it terminated Ms. Taylor's parental rights in the course of the modification action without simultaneously adhering to the requirements of the current adoption code.

## CR 60(b)(11)

CR 60(b)(11) grants the court discretion to vacate an order for "[a]ny other reason justifying relief from the operation of the judgment." Despite its broad language, the use of CR 60(b)(11) should be reserved for situations involving extraordinary circumstances not covered by any other section of CR 60(b). *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985). Furthermore, those

circumstances must relate to "irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings." *Id. See, e.g., In re Marriage of Flannagan*, 42 Wn. App. 214, 709 P.2d 1247 (1985) (passage of Uniformed Services Former Spouses Protection Act constituted extraordinary circumstance and thus relief under the Act was properly granted retroactively pursuant to CR 60(b)(11)).

> [I]rregularities justify vacation [under CR 60(b)(11)] whereas errors of law do not. For the latter the only remedy is by appeal from the judgment. The power to vacate for irregularity is not to be used by a court as a means to review or revise its judgments or to correct mere errors of law into which it may have fallen. . . .
>
> . . . .
>
> . . . Viewing the problem more generally it appears that an irregularity is regarded as a more fundamental wrong, a more substantial deviation from procedure than an error of law. An irregularity is deemed to be of such character as to justify the special remedies provided by vacation proceedings, whereas errors of law are deemed to be adequately protected against by the availability of the appellate process. Other than that, the most that can be said is that it must be left for the court in each instance to classify.

Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505, 515 (1960). Although we deal here with an irregularity of egregious proportions, we would not be inclined to grant relief if only the interests of Ms. Taylor were at stake. Although Ms. Taylor may have had altruistic motives, she nevertheless invited the irregularity by voluntarily consenting to relinquishment of her parental rights and providing the court with documents that did not meet the requirements of the adoption statutes. Moreover, she benefited from her bargain by being freed of her child support obligations, as well as her other parental obligations.

If these children had been adopted by a stepparent in the interim, we would almost certainly deny relief, regardless

of the irregularity of the relinquishment and termination proceedings. This is because the adoption code itself governs the time in which a valid relinquishment and consent to adoption may be revoked. As we have noted, the current adoption statute provides that a parent may relinquish his or her parental rights only when the Department of Social and Health Services, an adoption agency, or a prospective adoptive parent stands ready to assume the responsibilities that the relinquishing parent is abdicating, and the relinquishment must be accompanied by a consent to adoption. Under RCW 26.33.080, a petition for relinquishment *must* be accompanied by a written consent to assume custody by the department, an agency, or a prospective adoptive parent, and the court *shall* award custody of the child to the consenting agency or prospective adoptive parent. Thus, a valid relinquishment is one that is accompanied by a consent to adoption and is revocable before the consent to adoption is approved by the court. RCW 26.33.160. The court approves the relinquishment and consent to adoption by terminating parental rights and awarding custody to the department, agency, or prospective adoptive parent. RCW 26.33.090. After the court approves the consent to adoption, it is irrevocable except for fraud or duress practiced by the person requesting the consent, or for lack of mental competency on the part of the person giving the consent, and (with a statutory exception not here applicable relating to Indian children) the consent is not revocable for any reason more than one year after it has been approved by the court. RCW 26.33.160(4)(g). Permitting parents to challenge voluntary relinquishment and termination orders at any time pursuant to CR 60(b) would fly in the face of the revocation provisions of the adoption code, would invite uncertainty and delay that would discourage the emotional and financial commitment that prospective adoptive parents must make, and would result in significant harm to children who have become integrated into adoptive homes. Thus, if these children had been adopted by a stepparent in the interim between entry of the termination order and the motion to vacate, we would be unlikely to grant relief notwithstand-

ing the fact that the modification court, although purportedly acting under authority of the adoption statute, in fact acted outside the provisions of that statute.

Our concern is not the predicament in which Ms. Taylor finds herself, but rather, the predicament in which the modification court's irregular action placed the children of the parties. Although the adoption statute does not *require* the appointment of a guardian ad litem for children who are the subject of a relinquishment and termination proceeding (an exception applies to Indian children), in that RCW 26.33.070 states that a court "may" appoint a guardian ad litem for a child adoptee, we believe that one should have been appointed in this instance. The Family Court Services report did not address the possibility of termination of Ms. Taylor's parental rights, nor should it have. No such action was contemplated when the referral to Family Court Services was made, or when it issued its report. Moreover, the Family Court Services report reflects that the children love their mother very much, and that although they were happy living with their father, they also wanted to spend time with their mother, and to have a good relationship with her. The report reflects that the children had fond memories of a time, earlier in their childhoods, when they did have a good relationship with their mother, and that they very much wanted to have "their old mom back." Clerk's Papers at 307.[3] Under these circumstances, the modification court, before it decided to even consider the petition for relinquishment of Ms. Taylor's parental rights, let alone to grant it, should have appointed a guardian ad litem to thoroughly evaluate the emotional, psychological, and economic impact of termination of the mother's parental rights and responsibilities on these children. The modi-

---

[3] The Family Court Services report also reveals that Ms. Taylor had a number of parenting deficiencies, but none that justified termination of her parental rights, and none that placed the children in danger of physical harm, although certainly Ms. Taylor's parental shortcomings were detrimental to the children's emotional well-being. The report also reveals that Ms. Taylor was clearly in need of professional assistance from a mental healthcare provider, first to help her recognize her parenting deficiencies, and second to help her overcome them, for the sake of the children.

fication court's failure to have done so in and of itself justifies vacation of the order terminating parental rights in this particular case, given that the children have not been adopted in the interim by a stepparent.

This appeal also raises serious issues of public policy that go beyond the impact of the procedural irregularities on the children involved in this particular case. As helpful as the legal analyses provided by amici have been, their eloquent articulation of the public policy at stake has been even more helpful. The Family Law Executive Committee wrote:

> On a regular basis, we as practitioners disabuse clients of the notion that parenting plan provisions and child support can be tied to one another and bartered off one for the other. Not infrequently, we encounter proposals by parties for one parent to have his or her rights terminated so that we will not have to address contentious issues related to the children. For years we have told clients that a stipulated parental rights termination within the context of a family law action is not possible—that a parent's rights can only be terminated within the framework of an adoption (stepparent or otherwise) or dependency proceedings.
>
> As practitioners who work on a daily basis "in the trenches" with family law litigants, members of the Family Law Executive Committee are well aware of the pressures that operate on our clients. There is not one of us who has not, at some point in our practice, had a client who was willing "to give up everything" in order to achieve his or her one critical goal. . . .
>
> If the court were to uphold stipulations such as the one between the parties in this case, entered without participation by a guardian *ad litem* or meaningful judicial scrutiny, there will be many instances where children's rights will be bartered away by parents to achieve their own ends or surrendered by one parent acting under duress. Such a practice is clearly contrary to public policy and tramples on children's fundamental rights to have their parent-child relationships protected.

Amicus Curiae Br., Wash. State Bar Ass'n Family Law Section, at 16-17.

The Attorney General's Office wrote:

> The frustration of this case stems from the violation of our public policy recognition placing the welfare of the child above the parents in all proceedings, and in recognizing that stability and permanency is owed to all children subject to proceedings under RCW Title 26. Approval of the termination of parental rights order under these facts invites subterfuge and fraud by those parents wanting relief from litigation, parental responsibility, and/or child support—a practice specifically denounced by the Legislature and not supported in law or policy in this state.

Amicus Curiae Br., Office of the Att'y Gen., at 19.

We wholeheartedly agree. For these sound reasons of public policy, as well as the other reasons stated in this opinion relating to the protection of rights of the children of these parties, we reverse the trial court's order denying Ms. Taylor's motion to vacate the order terminating her parental rights.

We remand to the modification court with instructions that the order terminating Ms. Taylor's parental rights be vacated under CR 60(b)(11), that the modification action be reinstated, that the temporary parenting plan be reinstated, pendente lite, that the Family Services report be updated, and that the court proceed in due course to enter a permanent parenting plan and provide for the support of the parties' dependent children.

The parties have not briefed the question of whether, under the circumstances of this case, it would be legally permissible and otherwise appropriate for the modification court to award a judgment for back child support against Ms. Taylor, following our remand, and we did not request amici to address the issue. Accordingly, as was suggested by amicus the Attorney General's Office, we remand the issue of back child support to the modification court for determination, after the parties have been given the opportunity to brief the issue.

BECKER, C.J., and BAKER, J., concur.