*In re* KIOGIMA

Docket No. 130159. Submitted December 5, 1990, at Grand Rapids. Decided May 6, 1991, at 9:40 A.M. Leave to appeal sought.

   The Department of Social Services filed a petition in the Emmet County Probate Court against Norma J. Walker and Keith Kiogima, charging them with neglecting their American Indian minor children. Walker voluntarily relinquished her parental rights in the children, releasing them for adoption, and the court, Frederick R. Mulhauser, J., terminated her parental rights. She subsequently petitioned the court to set aside the order of voluntary termination, arguing that pursuant to the Indian Child Welfare Act, 25 USC 1913(c), she could withdraw her voluntary relinquishment of parental rights at any time before a final order of adoption. The court denied the petition, and Walker appealed.

   The Court of Appeals *held:*

   Walker's right under 25 USC 1913(c) to withdraw her consent to the termination of her parental rights expired with the entry of the final order terminating her parental rights. Section 1913(c) provides that in any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time before the entry of a final decree of termination or adoption.

   Affirmed.

INDIANS — PARENT AND CHILD — VOLUNTARY TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT.

   A parent's right pursuant to the Indian Child Welfare Act to withdraw consent to a voluntary termination of parental rights in an Indian child expires upon the entry of a final order of termination (25 USC 1913[c]).

*Diane M. Smith,* Prosecuting Attorney, and

REFERENCES

Am Jur 2d, Indians § 8.7.
See the Index to Annotations under Children; Indians.

*James R. Linderman,* Assistant Prosecuting Attorney, for Department of Social Services.

*James A. Bransky,* for Norma J. Walker.

Before: GRIBBS, P.J., and SULLIVAN and GRIFFIN, JJ.

GRIFFIN, J. Respondent, Norma Jean Walker, appeals as of right from a probate court order denying her petition to set aside a prior order by which she voluntarily terminated her parental rights to her three minor children. On appeal, respondent contends that pursuant to the Indian Child Welfare Act, 25 USC 1901 *et seq.,* she had an absolute right to withdraw her consent to termination of her parental rights at any time prior to a final order placing the children for adoption. We disagree and hold that respondent's right to withdraw her consent pursuant to 25 USC 1913(c) expired with the entry of a final order terminating her parental rights.

I

The facts of this case are undisputed. Respondent is a native American and the mother of three native American children. On October 9, 1989, respondent contacted the Emmet County Department of Social Services and stated that she wanted to release her children for adoption because, although she loved her children, she "could not be a mother." Four days later, on October 13, 1989, a hearing was held for the purpose of allowing respondent to execute a release of her parental rights. At the outset of the hearing, the probate court confirmed that respondent was represented by an attorney, had discussed the matter with her attorney, and understood the consequences of a

release. Respondent then signed the release, and a final order terminating her parental rights was entered that same day.

Thereafter, on April 18, 1990, respondent petitioned the probate court to set aside the order of termination. At a hearing held on May 29, 1990, respondent argued that, pursuant to the Indian Child Welfare Act, she could revoke the release at any time prior to a final order of adoption. The probate court rejected respondent's arguments and denied the petition in an opinion and order dated June 7, 1990.

The lower court's well-reasoned opinion contains the following additional factual background:

> This case involves three minor Native American children, Keith Allen Kiogima, Jr., dob: May 6, 1986, and twins Tamara Lynn Kiogima and Tonya Marie Kiogima, dob: September 9, 1987. The father of the children is Keith Kiogima and the mother is Norma Walker.
>
> This family first came to the attention of the Emmet County Probate Court on August 10, 1988, when a petition was filed charging general neglect of the Kiogima children by their parents who were then living separately. By stipulation entered the same day, August 10, 1988, the mother and father, both of whom were independently represented by counsel, agreed to place their three children in foster care pending a preliminary hearing.
>
> On August 18, 1988, a preliminary hearing was convened during which time all parties agreed that the supervision of the case would be turned over to the Michigan Indian Child Welfare Agency, hereinafter referred to as MICWA; that the children should be returned to the mother under conditions regarding housing, care and support; that the father's visitation would be regulated; and that the trial would be adjourned for six months.
>
> On February 17, 1989, the parties, together with their counsel, agreed to dismiss the petition.

On October 13, 1989, a new petition was filed, charging general neglect by the father. At that point in time the mother had informally relinquished custody and supervision of the children to the father who, in the view of the petitioner, was not adequate to provide the children with suitable care. At the time of the preliminary hearing, also held on October 13, 1989, the children were again placed under the supervision of MICWA and into out-of-parent foster care.

Also, on October 13, 1989, the mother, Norma Walker, together with the assistance of her counsel, voluntarily released her parental rights to all three children to the Michigan Department of Social Services. The mother was advised that she had a right to request a rehearing within 20 days or to appeal within 21 days after an order was entered terminating her parental rights.

Following the acceptance of the release by the mother, an order terminating parental rights to each of the three children was duly entered on October 13, 1989.

Although the father has retained his rights, the children have remained in foster care. If the father releases his own parental rights, MICWA intends an adoptive placement with a paternal aunt.

II

The parties agree that the disposition of this case hinges on a proper construction of 25 USC 1913(c). This statute provides:

In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.

On appeal, respondent contends that this section affords her the unqualified right to revoke her consent at any time prior to a final order of adoption. Specifically, respondent argues that a plain reading of this section reveals that it does not differentiate between a situation where a parent releases her children for adoptive placement and a situation where a parent consents to adoption by a specific individual. In either case, respondent argues, she retains her right to revoke her consent until the entry of a final order of adoption.

The crux of respondent's position is that the statute must be construed in light of the legislative intent behind the Indian Child Welfare Act. According to respondent, the act was designed largely to provide uniform standards for determining the placement of Indian children and to protect the rights of Indian parents and communities in their relations with state agencies. See generally *Mississippi Band of Choctaw Indians v Holyfield,* 490 US 30; 109 S Ct 1597; 104 L Ed 2d 29 (1989). In light of this intent, respondent asserts that the time for revocation must be the same regardless of the manner in which the Indian parent/child relationship was severed under state law. To hold otherwise, respondent contends, would be to allow state procedural distinctions with regard to how a child is placed for adoption to control her right to reclaim her children under federal law. After thorough consideration, we find respondent's argument to be without merit.

### III

At the outset, we note that adoption by release and adoption by consent, although similar, are distinct procedures under Michigan law. This distinction was succinctly discussed in *In re Nord,* 149 Mich App 817, 820-821; 386 NW2d 694 (1986):

The Michigan Adoption Code, MCL 710.21 *et seq.*; MSA 27.3178(555.21) *et seq.,* provides for two basic methods by which biological parents may agree to their child's being placed for adoption. The child may be *released* for adoption under § 28 and related sections, or the parents may *consent* to the adoption under § 43.

The code provides in detail the circumstances under which release or consent is the appropriate method to employ. The fundamental distinction is that, under a release for adoption, the release is given to a child placement agency or to the Department of Social Services, while a consent to adoption is utilized where the prospective adoptive parent is related to the child within four degrees of affinity or consanguinity or is the child's stepparent. The two procedures, although distinct, are similar in nature and purpose.

In the present case, we think it clear that respondent's parental rights were terminated in connection with a release for adoption. Further, as noted above, the order of termination was entered the same day as the release. Whether this order precludes respondent from thereafter withdrawing her consent pursuant to 25 USC 1913(c) is a matter of first impression in this state. Accordingly, we look to other jurisdictions.

In *In re JRS,* 690 P2d 10 (Alas, 1984), the Alaska Supreme Court interpreted 25 USC 1913(c) on facts substantially similar to the case at bar. In *JRS,* the respondent mother voluntarily relinquished her parental rights to her Indian child five days before a scheduled involuntary termination hearing. Twenty days after the relinquishment was entered, the trial court entered a final order terminating the respondent's parental rights. More than five months later, the respondent attempted to revoke her relinquishment. Relying on 25 USC 1913(c), the trial court ruled that respondent's

attempt to revoke was without legal effect. The Alaska Supreme Court agreed, reasoning as follows:

> [W]e do not believe that § 1913(c) allows a parent to withdraw a voluntary relinquishment of parental rights after a final order terminating those rights has been entered. Section 1913(c) applies to two kinds of proceedings: to voluntary proceedings for termination of parental rights and to voluntary proceedings for the adoptive placement of Indian children. The consent it refers to may be one of two kinds: a consent to termination of parental rights or a consent to adoptive placement. A consent to termination may be withdrawn at any time before a final decree of termination is entered; a consent to adoption at any time before a final decree of adoption. *If Congress had intended consents to termination to be revocable at any time before entry of a final decree of adoption, the words "as the case may be" would not appear in the statute.* Therefore, if the Superior Court's order was a final order, M.C.H.'s purported revocation was without legal significance. [*Id.* at 13-14; emphasis added.]

Even more on point is the decision of the North Dakota Supreme Court in *BRT v Executive Director of Social Service Board of North Dakota,* 391 NW2d 594 (ND, 1986). There, the mother executed a voluntary petition for the termination of her parental rights to her seven-year-old Indian son. Approximately one month later, a hearing was held, resulting in termination of the mother's parental rights. Nineteen months later, the mother petitioned the court to set aside the order of termination. The trial court denied the petition, reasoning, inter alia, that the mother's consent was not withdrawn before the entry of the final decree of termination.

On appeal, the mother raised the precise argument raised in this case. The mother asserted that although a final decree of termination had been entered, no final decree of adoption had been entered and, therefore, she retained the right to have the child returned to her under 25 USC 1913(c). The North Dakota Supreme Court disagreed, and adopted the rationale of the Alaska Supreme Court in *JRS, supra.* Specifically, the court held that "B.R.T.'s right to withdraw her consent to the termination under § 1913(c) expired when the order terminating parental rights became final . . . ." *Id.* at 599.

After reviewing these decisions, we find them to be persuasive and conclude that they reflect a proper construction of 25 USC 1913(c). In particular, we are convinced that to read the statute as respondent suggests would render the language "as the case may be" entirely superfluous. Such a reading would run afoul of one of the basic rules of statutory construction: no language of a statute should be treated as surplusage or rendered nugatory. See *Michigan Harness Horsemen's Ass'n v Racing Comm'r,* 123 Mich App 388, 391-393; 333 NW2d 292 (1983). Accordingly, we hold that respondent's right to withdraw her consent to termination under 25 USC 1913(c) expired with the entry of the final order terminating her parental rights.

Affirmed.