# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* JJW and ELW, Minors.

FOR PUBLICATION
June 8. 2017
9:15 a.m.

No. 334095
Oakland Circuit Court
LC No. 2015-837756-AM

---

*In re* WILLIAMS, Minors.

No. 335932
Macomb Circuit Court
Family Division
LC No. 2012-000291-NA

---

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

In Docket No. 334095, petitioners, foster mothers (collectively "petitioners"), appeal as of right an Oakland Circuit Court order denying their petition to adopt JJW and ELW (collectively, "the children"). The children's biological father, intervenor, is a member of the Sault Ste. Marie Tribe of Chippewa Indians (the "Tribe"), also an intervening party in the lower court proceedings. The children are eligible for membership in the Tribe. In addition to challenging the order denying the petition to adopt, petitioners also challenge an earlier order rescinding the order placing the children with them for purposes of adoption on the basis of the withdrawal of consent by the child placing agency and the Tribe.

In Docket No. 335932, respondent, the children's biological father ("father"), appeals by leave granted[1] a subsequent order from the Macomb Circuit Court denying his motion to withdraw his consent to terminate his parental rights, and for return of the children.

Because the children are eligible for membership in the Chippewa Tribe, the parties' claims on appeal implicate the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the

---

[1] *In re Williams, Minors*, unpublished order of the Court of Appeals, entered December 19, 2016 (Docket No. 335932).

-1-

Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. ICWA establishes minimum federal standards for the placement of Indian children in foster or adoptive homes that "reflect the unique values of Indian culture." 25 USC 1902. Likewise, the Michigan Legislature enacted MIFPA, with the purpose of protecting "the best interests of Indian children and promot[ing] the stability and security of Indian tribes and families." MCL 712B.5(a). There is no dispute that the children in this case are Indian children under both ICWA and MIFPA. See 25 USC 1903(4) and MCL 712B.3(k).

We affirm the Macomb Circuit Court's order denying respondent father's motion to withdraw consent to terminate his parental rights and for return of the children because he does not have a right to withdraw his consent under MIFPA, specifically MCL 712B.13, the ICWA, or the Adoption Code. We vacate the Oakland Circuit Court's order rescinding the order placing the children with petitioners because we conclude that neither ICWA nor MIFPA permit rescission of a placement order due to a change in consent by a child placing agency or tribe after entry of the placement order. Because the Oakland Circuit Court did not rule on the factual issue whether adoption was in the children's best interests, or whether circumstances had arisen that made adoption undesirable, we reverse the order denying petitioners' petition for adoption and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In August 2012, the Department of Health and Human Services (DHHS) filed a petition in the Macomb Circuit Court requesting that the court take jurisdiction over the two-year-old JJW and newborn ELW, whose meconium screen tested positive for THC, opiates, and cocaine. Both biological parents, respondent father and the mother, admitted that they had relapsed into substance abuse. The children were removed from their biological parents' care and placed with petitioners on August 13, 2012.

Nearly three years later, in May 2015, respondent father signed a form titled, "RELEASE OF CHILD BY PARENT." It provided, in relevant part:

> 2. . . . I voluntarily give up permanently all of my parental rights to my child.
>
> 3. I understand my right to request a rehearing or to appeal within 21 days after an order is entered terminating my parental rights.
>
> 4. I have not received or been promised any money or anything of value for the release of my child except for charges and fees approved by the court.
>
> 5. Of my own free will, I give up completely and permanently my parental rights to my child, and I release my child to Michigan Department of Human Services for the purpose of adoption.

The statutes and court rule listed at the bottom of the release form are: "MCL 712.28, MCL 710.29, MCL 710.54, 25 USC 1913(a), [and] MCR 3.801." The children's mother executed the same document on the same day. At the hearing regarding the release, the biological parents waived any right to a judge. The biological parents explained that they could not provide for

their children and the current placement with petitioners was "working out good." The referee advised them that there was no guarantee who the children would be placed with and respondent father replied, "Right." Following the release of parental rights, the Macomb Circuit Court entered an order terminating the biological parents' rights to the children, and also continuing the children's placement with petitioners. The Macomb Circuit Court committed the children to the Michigan Children's Institute (MCI) for further case planning.[2]

Petitioners have four other biological and adoptive children in their family. Throughout the period of time shortly after the children's placement with petitioners in 2012, until petitioners filed a petition for adoption in December 2015, respondent Hands Across the Water (HAW) investigated a number of reports involving the foster family, and various safety plans and corrective action plans were implemented. Mary E. Rossman, the Superintendent of MCI, nevertheless voluntarily consented to the adoption of the children by petitioners. In addition, the Tribe approved of the adoption "with reservations."

On February 2, 2016, the Oakland Circuit Court terminated the rights of MCI after finding that the consent to adoption was genuine, given with legal authority, and the best interests of the children would be served by the adoption. After consent, the court entered an order placing both children with petitioners.

On February 22, 2016, HAW wrote a letter to the Oakland Circuit Court asking it to rescind the order placing the children with petitioners and to not finalize the adoption. In the letter, HAW detailed previous allegations and action plans, and noted new allegations[3] suggesting that the foster family would be unable to meet the needs of all the children in the home. On March 7, 2016, the Tribe wrote to the Oakland Circuit Court supporting HAW's recommendation to oppose the adoption of the children by petitioners.

At a hearing on April 29, 2016, the Oakland Circuit Court judge suggested that she had little discretion in this matter because, under ICWA, any parent or Indian tribe could withdraw consent to placement at any time, and upon withdrawal, the child would be returned to the parent or tribe. The judge stated that she was "irritated and frustrated" that HAW had not done its job to recognize the problems with the placement earlier, before the children were "going to be ripped out of this home." The judge then requested additional briefing.

On June 14, 2016, the Oakland Circuit Court entered an opinion and order providing, in relevant part:

---

[2] The record shows continued monitoring of the children's placement by the Macomb Circuit Court, but adoption proceedings involving petitioners later occurred in the Oakland Circuit Court.

[3] A new corrective action plan was created for one new allegation, but HAW concluded that the foster family was following safety plans already instituted regarding the second new allegation.

Consents to adoption may be executed by "the authorized representative of the department or his or her designee or of a child placing agency to whom the child has been permanently committed by an order of the court and/or by the court . . . having permanent custody of the child." MCL 710.43. Under ICWA Section 1913(c), parents may withdraw consent to adoptive placement for any reason at any time prior to the entry of a final decree of adoption. See *In re Kiogima*, 189 Mich App 6 (1991). Similarly, under MIFPA, "a parent or Indian custodian who executes a consent" for placement for purposes of adoption "may withdraw his or her consent at any time before entry of a final order of adoption by filing a written demand requesting the return of the child." MCL 712B.13(3) (emphasis added). "Once a demand is filed with the court, the court shall order the return of the child." *Id.* Importantly, withdrawal of consent by a parent or Indian custodian "constitutes a withdrawal of . . . a consent to adopt executed under" MCL 710.43, cited above. MCL 712B.13(3).

In *Oglaga Sioux Tribe*, the court at issue held that "Tribes have *parens patriae* standing to bring [an] action" on par with that of a biological parent. *Supra*, 993 F Supp 2d 1017 at 1027-28. The Court reasoned that ICWA was enacted to "'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.'" *Id.* (quoting ICWA sec 1902).

### *The Court's Findings*

Based on the legal authority cited above, the Court has no choice but to grant the Agency's and the Tribe's request to set aside the Order. The Court notes that Petitioners' citation of MCL 710.51 is inapplicable here, as Minors are of Indian heritage such that ICWA and MIFPA supersede any and all conflicting provisions of the Michigan Adoption Code. The Court notes that the Agency and the Tribe both have standing to rescind the Order and that their authority to do so still exists because the finalization of Minors' adoption has not yet occurred. While ICWA only specifically addresses a *parent's* right to revoke consent to adoption, the Court notes that MIFPA expressly expands the authority to a Minor's Indian custodian and then provides that an agency's consent to adopt is akin to a parent's and/or an Indian custodian's consent. Finally, the Court notes that the Court's finding is corroborated by ICWA's stated intent, as the Act was created to protect a tribe's stability and security by giving deferential preference to a minor's tribe.

The Court notes that it does not make this finding without apprehension, as Minors have resided with Petitioners for most of Minors' young lives. As a result, the Court deems it necessary to schedule a hearing as soon as possible to determine the details of removing Minors from Petitioners' residence and ensuring that said removal is performed to reduce any potential trauma on Minors, as well as Petitioners.

On June 21, 2016, the Oakland Circuit Court recommitted the children to MCI and denied petitioners' petition for adoption. By that time, the children (ages almost four and six ) had lived with petitioners approximately four years.

Following the order rescinding the order placing the children with petitioners, respondent father filed a notice in the Macomb Circuit Court to withdraw consent to the termination of his parental rights and a demand requesting the return of the children pursuant to MCL 712B.13(3). Respondent father stated that he voluntarily relinquished his parental rights to the children so that petitioners could adopt them, but the Oakland Circuit Court had recently denied their petition for adoption.

The Macomb Circuit Court refused to withdraw respondent father's consent and ruled that MCL 712B.13(3) did not apply because this was not a voluntary consent to placement for purposes of adoption. The court disagreed with respondent father's claim that he had consented to the adoptive placement with petitioners. The court then found that MCL 712B.13(5) applied to the release in this case. The court reasoned that although that statute references MCL 712B.15, the latter statute does not cover withdrawal, so the court could reference ICWA and *In re Kiogima*, 189 Mich App 6; 472 NW2d 13 (1991), which only allow rescission of a release before termination of parental rights. Citing *In re MD*, 110 Wash App 524; 42 P3d 424 (2002), the court further reasoned that allowing the release to be rescinded at any time would make termination of parental rights conditional and meaningless.

## II. DOCKET NO. 334095 – PETITIONERS' APPEAL

The primary questions presented in petitioners' appeal concern who has authority to give consent to the adoptive placement, and whether ICWA or MIFPA permit HAW or the Tribe to withdraw consent after the order placing the children is entered.

In *In re KMN*, 309 Mich App 274, 286; 870 NW2d 75 (2015), this Court, quoting *Hoffenblum v Hoffenblum*, 308 Mich App 102, 109-110; 863 NW2d 352 (2014), observed:

> "The primary goal when interpreting a statute is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217-218; 801 NW2d 35 (2011). 'The words contained in a statute provide us with the most reliable evidence of the Legislature's intent.' *Green v Ziegelman*, 282 Mich App 292, 301; 767 NW2d 660 (2009). '[S]tatutory provisions are not to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole.' *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010) (emphasis omitted). If statutory language is unambiguous, the Legislature is presumed to have intended the plain meaning of the statute. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). An unambiguous statute must be enforced as written. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007)."

"Statutes that relate to the same subject matter or share a common purpose are *in pari materia* and must be read together as one law . . . to effectuate the legislative purpose as found in

harmonious statutes." *In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142, 148; 762 NW2d 192 (2009). "If two statutes lend themselves to a construction that avoids conflict, that construction should control." *Id.* "When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute." *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007).

## A. MCI'S AUTHORITY TO WITHDRAW CONSENT

After the children's biological parents released their parental rights, the children were committed to MCI. According to MCL 400.203(1), the superintendent of MCI "shall represent the state as guardian of each child . . . ." The MCI superintendent "has the power to make decisions on behalf of a child committed to the institute" and is authorized to consent to that child's adoption. MCL 400.203(2) and MCL 400.209; see also MCL 710.43(1)(e) (consent to adoption shall be executed by the guardian of a child). MCL 710.51 addresses the procedure that follows a consent to adoption and provides, in relevant part:

> (1) Not later than 14 days after receipt of the report of investigation, except as provided in subsections (2) and (5), the judge shall examine the report and shall enter an order terminating the rights of the child's parent or parents, if there was a parental consent, or the rights of any person in loco parentis, if there was a consent by other than parents, and approve placement of the child with the petitioner if the judge is satisfied as to both of the following:

> (a) The genuineness of consent to the adoption and the legal authority of the person or persons signing the consent.

> (b) The best interests of the adoptee will be served by the adoption.

> * * *

> (3) Upon entry of an order terminating rights of parents or persons in loco parentis, a child is a ward of the court and a consent to adoption executed under section 43 of this chapter shall not be withdrawn after the order is entered . . . .

The DHHS's Adoption Services Manual[4] similarly explains:

> After consent to adopt has been issued to an adoptive family, the family may file a petition to adopt with the court. If circumstances develop that cause the adoption worker to determine that adoption by the family who has received consent would not be in the best interests of the child, the adoption worker must document in writing the reasons and immediately provide this documentation to

---

[4] DHHS Adoption Services Manual, available at https://dhhs.michigan.gov/olmweb/ex/html/, Children's Services Agency.

the Michigan Children's Institute (MCI) superintendent or his or her designee that the request for consent is withdrawn.

Consent may be withdrawn at any time up until the court has issued an order terminating the rights of the Department of Human Services (DHS). If the court has issued an order terminating the rights of DHS and an order placing the child for adoption, the child is no longer under the supervision of MCI and the MCI superintendent or his or her designee does not have authority to withdraw consent. [ADM 0840.]

Pursuant to the plain language of MCL 400.203(2) and MCL 400.209, MCI had authority to consent to the adoption of the children by petitioners. After the Oakland Circuit Court terminated MCI's rights and entered an order placing the children with petitioners on February 2, 2016, MCI lost any authority to withdraw consent.

## B. WITHDRAWING CONSENT UNDER ICWA AND MIFPA

Even though MCI lost authority to withdraw consent after the February 2, 2016 order, we must still determine whether either HAW or the Tribe retained such authority because the children are Indian children for purposes of ICWA and MIFPA. Again, MCL 710.51(3) provides that consent to adoption "shall not be withdrawn" after an order terminating rights of parents or persons *in loco parentis*. Quoting from and combining portions of MCL 712B.13(1) and MCL 712B.13(3), the Oakland Circuit Court nevertheless found:

The Court notes that the Agency and the Tribe both have standing to rescind the Order and that their authority to do so still exists because the finalization of Minors' adoption has not yet occurred. While ICWA only specifically addresses a *parent's* right to revoke consent to adoption, MIFPA expressly expands the authority to a Minor's *Indian custodian* and then provides that an agency's consent to adopt is akin to a parent's and/or an Indian custodian's consent.

The Oakland Circuit Court correctly concluded that neither HAW nor the Tribe established any authority to withdraw consent under ICWA. Rather, ICWA gives the parent of an Indian child the power to withdraw consent in a voluntary proceeding. 25 USC 1913(c) provides:

In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.

The Oakland Circuit Court erred in concluding that both HAW and the Tribe had authority to withdraw consent under MIFPA. MIFPA addresses withdrawal related to both guardianship and adoptive placement in MCL 712B.13, which provides:

(1) If both parents or Indian custodian voluntarily consent to a petition for guardianship under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, or if a parent consents to adoptive placement or the termination of his or her parental rights for the express purpose of adoption by executing a release under sections 28 and 29 of chapter X, or consent under sections 43 and 44 of chapter X, the following requirements must be met:

(a) To be valid, consent under this section must be executed on a form approved by the state court administrative office, in writing, recorded before a judge of a court of competent jurisdiction, and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or that it was interpreted into a language that the parent or Indian custodian understood. Any consent given before, or within 10 days after, birth of the Indian child is not valid.

(b) Notice of the pending proceeding must be given as prescribed by Michigan supreme court rule, the Indian child welfare act, and section 9 of this chapter.

(c) The voluntary custody proceeding shall be conducted in accordance with Michigan supreme court rules and the following statutes:

(*i*) In a guardianship proceeding under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, section 25 of this chapter also applies.

(*ii*) In an adoption proceeding, section 27 of this chapter also applies.

* * *

(3) If the placement is for purposes of adoption, a consent under subsection (1) of the Indian child's parent must be executed in conjunction with either a consent to adopt, as required by sections 43 and 44 of chapter X, or a release, as required by sections 28 and 29 of chapter X. A parent who executes a consent under this section may withdraw his or her consent at any time before entry of a final order of adoption by filing a written demand requesting the return of the Indian child. Once a demand is filed with the court, the court shall order the return of the Indian child. Withdrawal of consent under this section constitutes a withdrawal of a release executed under sections 28 and 29 of chapter X or a consent to adopt executed under sections 43 and 44 of chapter X.

(4) A parent or Indian custodian who executes a consent under this section for the purpose of guardianship may withdraw his or her consent at any time by sending written notice to the court substantially in compliance on a form approved

by the state court administrative office that the parent or Indian custodian revokes consent and wants his or her Indian child returned.

(5) A release executed under sections 28 and 29 of chapter X during a pendency of a proceeding under section 2(b) of chapter XIIA is subject to section 15 of this chapter. If the release follows the initiation of a proceeding under section 2(b) of chapter XIIA, the court shall make a finding that culturally appropriate services were offered.

(6) A parent who executes a consent to adoption under sections 43 and 44 of chapter X may withdraw that consent at any time before entry of a final order for adoption by filing notification of the withdrawal of consent with the court . . . .

None of the parties on appeal argue that the Oakland Circuit Court was correct in concluding that HAW and the Tribe could withdraw their consent as Indian custodians under MCL 712B.13. Indeed, the Tribe concedes that "[t]he trial court was not bound to follow the Tribe's objection . . . ." We agree that the circuit court's interpretation is contrary to the plain language of the statute for several reasons. First, as discussed further in Part III, any power to withdraw consent to an adoptive placement made under MCL 712B.13(3) is only expressly provided to parents. The plain language of the statute does not permit an Indian custodian to withdraw such consent to an adoptive placement. Rather, references to an Indian custodian in MCL 712B.13 relate only to consent for purposes of guardianship, not adoption, which is relevant to this case. See MCL 712B.13(1) and (4).

Second, even if an Indian custodian could withdraw consent to an adoptive placement made under MCL 712B.13(1), neither HAW nor the Tribe constitutes an Indian custodian under MIFPA. Pursuant to MCL 712B.3(n), " 'Indian custodian' means any Indian person who has custody of an Indian child under tribal law or custom or under state law or to whom temporary physical care, custody, and control have been transferred by the Indian child's parent." The children were wards of the court after it terminated MCI's rights and placed the children with petitioners for purposes of adoption. MCL 710.51(3). Therefore, neither HAW nor the Tribe had custody of the children. Moreover, HAW is not an "Indian person." Rather, a "[c]hild placing agency" means a private organization licensed under 1973 PA 116, MCL 722.111 to 722.128, to place children for adoption." MCL 710.22. Similarly, the Tribe is not a single "Indian person." "Indian tribe" or "tribe" means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the secretary because of their status as Indians . . . ." MCL 712B.3(o). The Legislature's distinct use of the terms "Indian custodian," "agency," and "tribe" throughout MIFPA demonstrates its intent that the terms are not interchangeable. See, e.g., MCL 712B.7(3), MCL 712B.9, and MCL712B.15(5).

Because neither ICWA nor MIFPA granted authority to HAW or the Tribe to withdraw consent after entry of the order placing the children and terminating MCI's rights, MCL 710.51(3), which precludes the withdrawal of consent after the order terminating MCI's rights, controls. The Oakland Circuit Court erred by concluding that a change in the consent of HAW or the Tribe could have any effect on the order placing the children with petitioners.

## C. STANDING

To support its conclusion that the Tribe's withdrawal of consent could affect the order placing the children, the Oakland Circuit Court also cited *Oglala Sioux Tribe v Van Hunnik*, 993 F Supp 2d 1017 (WD SD, 2014).[5] In that case, the federal district court for the Western District of South Dakota ruled that, where tribes assert claims on behalf of all of the sovereign's citizens, they have *parens patriae* standing to bring an action to litigate due process and ICWA violations. *Id.* at 1027-1028. "Parens patriae 'is a concept of standing utilized to protect those quasi-sovereign interests such as health, comfort and welfare of the people, interstate water rights, general economy of the state, etc.' " *Coldsprings Twp v Kalkaska Co Zoning Bd of Appeals*, 279 Mich App 25, 29; 755 NW2d 553 (2008), quoting *Black's Law Dictionary* (6th ed). There is no question that the Tribe has standing in this case. ICWA and MIFPA both allow a tribe to intervene. See 25 USC 1911(c) and MCL 712B.7(6). But "[s]tanding in no way depends on the merits of the case." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014) (quotation marks and citation omitted). The mere fact that the Tribe has an interest in the placement of Indian children under ICWA and MIFPA does not confer any statutory right to withdraw consent. The Oakland Circuit Court erred by relying on standing to support its decision to rescind the order placing the children.

## D. PLACEMENT PREFERENCES

The Oakland Circuit Court also found that allowing the Tribe's withdrawal of consent to affect the order placing the children was consistent with "ICWA's stated intent, as the Act was created to protect a tribe's stability and security by giving deferential preference to a minor's tribe." We conclude that ICWA placement preferences have no bearing on this case.[6] 25 USC 1915(a) provides that "[i]n any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families."

In *Adoptive Couple v Baby Girl*, ___ US ___; 133 S Ct 2552, 2564; 186 L Ed 2d 729 (2013), the United States Supreme Court held that ICWA's adoptive placement "preferences are inapplicable in cases where no alternative party has formally sought to adopt the child." In *Baby Girl*, the biological father (a member of an Indian tribe), who contested the child's placement with an adoptive couple and argued his parental rights should not have been terminated, did not seek to adopt the child in the lower court proceeding. *Id.* Although there was testimony in the record that the tribe had certified approximately 100 couples to be adoptive parents, none of those couples had formally sought to adopt the child in the state court. *Id.* at 2565 n 12. Because there was no 'preference' to apply if no alternative party that was eligible to be preferred under

---

[5] "Decisions from lower federal courts are not binding but may be considered persuasive." *Truel v City of Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010).

[6] We note that neither HAW nor the Tribe argue that any placement-preference provisions in ICWA or MIFPA apply.

§ 1915(a) had come forward, the placement was affirmed. *Id.* at 2564. Similarly, here, there was no pending adoption petition of an alternative party who was eligible to be preferred under 25 USC 1915(a). Thus, there was no ICWA preference to apply and this placement preference scheme under ICWA did not support the court's decision to rescind the order placing the children.

The list of potential placements under MIFPA in MCL 712B.23 also had no bearing after the children were placed with petitioners. As this Court explained in *In re KMN*, 309 Mich App 274, 290; 870 NW2d 75 (2015), citing MCL 712B.23(2):

> MIFPA differs from ICWA in that it does not give a preference to eligible parties over ineligible parties. Rather, MIFPA requires that, absent good cause, the adoptive placement *must* be either with a member of the child's extended family, a member of the Indian child's tribe, or an Indian family, in that "order of preference." [Emphasis in original.]

Or, under MCL 712B.23(6), "if the Indian child's tribe establishes a different order of preference, the department or court ordering the placement shall follow the tribe's order of preference." MCL 712B.23(4) addresses deviation from the list of potential placements and the court's responsibility to investigate and eliminate possible placements until the placement meets MIFPA requirements. The statute provides:

> The court shall not find good cause to deviate from the placement preferences stated in this section without first ensuring that all possible placements required under this section have been thoroughly investigated and eliminated. All efforts made under this section must be provided to the court in writing or stated on the record. The court shall address efforts to place an Indian child in accordance with this section at each hearing until the placement meets the requirements of this section.

The Tribe here created its own order of preference according to MCL 712B.23(6), which included a placement for the best interests of the children approved by the Tribe's Child Welfare Committee. The Child Welfare Committee concluded that placement with petitioners was in the children's best interests. Therefore, when the Oakland Circuit Court placed the children with petitioners on February 2, 2016, the court complied with MCL 712B.23. The court was only required to address efforts to place the children "in accordance with [with MCL 712B.23] at each hearing *until* the placement meets the requirements of this section." MCL 712B.23(4) (emphasis added). "Until" means "up to the time that; up to such time as." *Merriam-Webster's Collegiate Dictionary* (11th ed). The plain language of the statute requires compliance with the Tribe's preference up to the time of the placement. The Legislature did not impose any duty on the court to ensure that the placement continued to satisfy the Tribe's preferences after the time of the placement.[7] Therefore, the list of potential placements in MCL 712B.23 was inapposite at the

---

[7] The Tribe argues that changing its preference was its prerogative under *Miss Band of Choctaw Indians v Holyfield*, 490 US 30; 109 S Ct 1597; 104 L Ed 2d 29 (1989). Although that case

time the Tribe moved to withdraw consent after a proper placement was made according to that statute.

### E. BEST INTERESTS

HAW, the Tribe, and the lawyer-guardian ad litem all argue on appeal that, even if the withdrawal of consent by HAW and the Tribe should have had no effect on the order placing the children, the Oakland Circuit Court nevertheless properly denied the petition to adopt because the placement was not in the children's best interests, MCL 710.21a(b) and 710.22(g), and circumstances arose that made the adoption undesirable, MCL 710.56. We agree that the court had the authority to deny the petition for adoption on the basis that the adoption was undesirable. But no such finding was made in this case. Therefore, remand is required for the court to make the necessary factual determinations regarding the desirability of the adoption.

A general purpose of the Adoption Code is "[t]o provide procedures and services that will safeguard and promote the best interests of each adoptee in need of adoption and that will protect the rights of all parties concerned." MCL 710.21a(b). According to MCL 710.51:

> (1) Not later than 14 days after receipt of the report of investigation, except as provided in subsections (2) and (5), the judge shall examine the report and shall enter an order terminating the rights of the child's parent or parents, if there was a parental consent, or the rights of any person in loco parentis, if there was a consent by other than parents, and approve placement of the child with the petitioner if the judge is satisfied as to both of the following:
>
> (a) The genuineness of consent to the adoption and the legal authority of the person or persons signing the consent.
>
> (b) The best interests of the adoptee will be served by the adoption.

MCL 710.56(1) provides:

> Except as otherwise provided in this subsection, 6 months after formal placement under section 51 of this chapter, unless the court determines that circumstances have arisen that make adoption undesirable, the court may enter an order of adoption.

As petitioners argue on appeal, the Oakland Circuit Court never made any findings that the adoption was not in the children's best interests or that circumstances arose that made the

supported an interpretation of ICWA's domicile provisions by noting that the purpose of ICWA was to protect a tribe's ability to assert its interest in its children, *Holyfield* was decided before MIFPA was enacted. Moreover, this interpretation of MIFPA allows the Tribe to assert its interest in the children, but encourages stability and consistency in the decision regarding placement once it is made. Regardless, as discussed further in Part II-E, in this case when the Tribe changed its mind, it was not precluded from arguing that circumstances arose that made the adoption undesirable.

adoption undesirable. Rather, at the hearing on April 29, 2016, the court stated that it was bound by ICWA and had little discretion. In its June 14, 2016 opinion and order, the court rescinded the order placing the children with petitioners on the basis of the withdrawal of consent, and then in its July 8, 2016 order, it denied petitioners' petition for adoption. Although the parties claimed below, as well as on appeal, that new allegations affected the ability of the foster family to care for the children, the court made no findings regarding the allegations. Moreover, the court never weighed the allegations against its finding that the children "have resided with Petitioners for most of Minors' young lives." This Court may only review issues not preserved below if "a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case." *Heydon v MediaOne*, 275 Mich App 267, 278; 739 NW2d 373 (2007) (citation and quotation marks omitted). Because the Oakland Circuit Court did not rule on the factual issue whether the adoption was in the children's best interests or whether circumstances had arisen that made adoption undesirable, we decline to address this issue on appeal and remand for further proceedings.

HAW argues that the court was excused from making a best-interest determination because the motion to rescind the order placing the children could be treated as a motion for rehearing under MCR 3.806 and MCL 710.64, and this Court has ruled that trial courts have discretion whether to address the children's best interests on rehearings of adoption proceedings. Rehearing provisions in the court rules and Adoption Code require notice to all interested parties that a petition for rehearing has been filed. MCR 3.806(A) and MCL 710.64(1). Moreover, a trial court must rule that good cause exists to grant a rehearing. MCR 3.806(B). Contrary to HAW's claim, nothing in the record suggests that HAW requested rehearing when it sent the February 22, 2016 letter requesting that the court rescind the order placing the children with petitioners, or even that the court treat the letter as a petition for rehearing. In addition, the court never found the requisite good cause for a rehearing.[8]

### III. DOCKET NO. 335932 – RESPONDENT FATHER'S APPEAL

The question presented in respondent father's appeal is whether MIFPA permits him to withdraw his release of parental rights at any time before the entry of a final order of adoption. To resolve this question, it is necessary to review MCL 712B.13 in its entirety. That statute provides:

> (1) If both parents or Indian custodian voluntarily consent to a petition for guardianship under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, or if a parent consents to adoptive placement or the termination of his or her parental rights for the express

---

[8] On appeal, HAW cites *In re KJS*, unpublished opinion per curiam of the Court of Appeals, issued April 21, 2016 (Docket No. 330722), for the proposition that a party's email to the court can be treated as a petition for a rehearing, and argues that its February 22, 2016 letter was treated similarly. First, *In re KJS* is not binding under MCR 7.215(C)(1). Second, in *In re KJS*, the party actually requested rehearing. A similar request was not made in this case.

purpose of adoption by executing a release under sections 28 and 29 of chapter X, or consent under sections 43 and 44 of chapter X, the following requirements must be met:

(a) To be valid, consent under this section must be executed on a form approved by the state court administrative office, in writing, recorded before a judge of a court of competent jurisdiction, and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or that it was interpreted into a language that the parent or Indian custodian understood. Any consent given before, or within 10 days after, birth of the Indian child is not valid.

(b) Notice of the pending proceeding must be given as prescribed by Michigan supreme court rule, the Indian child welfare act, and section 9 of this chapter.

(c) The voluntary custody proceeding shall be conducted in accordance with Michigan supreme court rules and the following statutes:

(*i*) In a guardianship proceeding under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, section 25 of this chapter also applies.

(*ii*) In an adoption proceeding, section 27 of this chapter also applies.

(2) Consent described under subsection (1) must contain the following information:

(a) The Indian child's name and date of birth.

(b) The name of the Indian child's tribe and any identifying number or other indication of the child's membership in the tribe, if any.

(c) The name and address of the consenting parent or Indian custodian.

(d) A sworn statement from the translator, if any, attesting to the accuracy of the translation.

(e) The signature of the consenting parent, parents, or Indian custodian recorded before the judge, verifying an oath of understanding of the significance of the voluntary placement and the parent's right to file a written demand to terminate the voluntary placement or consent at any time.

(f) For consent for voluntary placement of the Indian child in foster care, the name and address of the person or entity who will arrange the foster care

placement as well as the name and address of the prospective foster care parents if known at the time.

(g) For consent to termination of parental rights or adoption of an Indian child, in addition to the information in subdivisions (a) to (f), the name and address of the person or entity that will arrange the preadoptive or adoptive placement.

(3) If the placement is for purposes of adoption, a consent under subsection (1) of the Indian child's parent must be executed in conjunction with either a consent to adopt, as required by sections 43 and 44 of chapter X, or a release, as required by sections 28 and 29 of chapter X. A parent who executes a consent under this section may withdraw his or her consent at any time before entry of a final order of adoption by filing a written demand requesting the return of the Indian child. Once a demand is filed with the court, the court shall order the return of the Indian child. Withdrawal of consent under this section constitutes a withdrawal of a release executed under sections 28 and 29 of chapter X or a consent to adopt executed under sections 43 and 44 of chapter X.

(4) A parent or Indian custodian who executes a consent under this section for the purpose of guardianship may withdraw his or her consent at any time by sending written notice to the court substantially in compliance on a form approved by the state court administrative office that the parent or Indian custodian revokes consent and wants his or her Indian child returned.

(5) A release executed under sections 28 and 29 of chapter X during a pendency of a proceeding under section 2(b) of chapter XIIA is subject to section 15 of this chapter. If the release follows the initiation of a proceeding under section 2(b) of chapter XIIA, the court shall make a finding that culturally appropriate services were offered.

(6) A parent who executes a consent to adoption under sections 43 and 44 of chapter X may withdraw that consent at any time before entry of a final order for adoption by filing notification of the withdrawal of consent with the court. In a direct placement, as defined in section 22(o) of chapter X, a consent by a parent or guardian shall be accompanied by a verified statement signed by the parent or guardian that contains all of the following:

(a) That the parent or guardian has received a list of community and federal resource supports and a copy of the written document described in section 6(1)(c) of the foster care and adoption services act, 1994 PA 204, MCL 722.956.

(b) As required by sections 29 and 44 of chapter X, that the parent or guardian has received counseling related to the adoption of his or her Indian child or waives the counseling with the signing of the verified statement.

(c) That the parent or guardian has not received or been promised any money or anything of value for the consent to adoption of the Indian child, except for lawful payments that are itemized on a schedule filed with the consent.

(d) That the validity and finality of the consent are not affected by any collateral or separate agreement between the parent or guardian and the adoptive parent.

(e) That the parent or guardian understands that it serves the welfare of the Indian child for the parent to keep the child placing agency, court, or department informed of any health problems that the parent develops that could affect the Indian child.

(f) That the parent or guardian understands that it serves the welfare of the Indian child for the parent or guardian to keep his or her address current with the child placing agency, court, or department in order to permit a response to any inquiry concerning medical or social history from an adoptive parent of a minor adoptee or from an adoptee who is 18 years or older.

On appeal, respondent father relies on the withdrawal provision in MCL 712B.13(3), which allows for a parent who executes a consent under subsection (1) to withdraw his or her consent at any time before entry of a final order of adoption. Under the plain language of MCL 712B.13(3), to withdraw consent, a parent must both: (1) consent under subsection (1), MCL 712B.13(1), and (2) execute either a consent to adopt, under MCL 710.43 and MCL 710.44, or a release, under MCL 710.28 and MCL 710.29. The Legislature's use of the phrase, "in conjunction with," establishes its intent that executing consent under subsection (1) is a separate obligation from executing a consent to adopt or release. Here, respondent father only executed a release under MCL 710.28 and MCL 710.29. Nothing in the record demonstrates that respondent father executed a consent under subsection (1). Because the requirements of MCL 712B.13(3) were not satisfied, any withdrawal provision in that subsection does not apply to this particular case. Therefore, the Macomb Circuit Court reached the right result in declining respondent father's request for relief under MCL 712B.13(3).

We note, however, that the Macomb Circuit Court's reasoning for excluding the application of MCL 712B.13(3)—that this was not an adoptive placement under MCL 712B.13(1)—is not consistent with the plain language of that subsection. *Demski v Petlick*, 309 Mich App 404, 441; 873 NW2d 596 (2015) ("this Court will affirm when the trial court reaches the right result for the wrong reason"). The court ruled that this was not a consent to adoptive placement because " 'Placement' or 'to place' means selection of an adoptive parent for a child and transfer of physical custody of the child to a prospective adoptive parent according to this chapter." As the record establishes, respondent father did not consent to a particular adoptive placement. Rather, the referee advised him that there were no guarantees about with whom the children would be placed. Regardless, MCL 712B.13(1) applies if a parent either "consents to adoptive placement or the termination of his or her parental rights for the express purpose of adoption by executing a release under sections 28 and 29 of chapter X, or consent under sections 43 and 44 of chapter X." Here, contrary to the circuit court's reasoning, respondent father could have consented for purposes of subsection (1) without consenting to a particular adoptive

placement and by instead consenting to the termination of his parental rights for the express purpose of adoption. As respondent father argues, MCL 710.28(5) also provides that a release under MCL 710.28 shall be given only to a child placing agency or to the agency. Therefore, contrary to the circuit court's interpretation, a specific adoptive placement was not required under MCL 712B.13(1).

Even though withdrawal of consent under MCL 712B.13(3) does not apply to this particular case, we note that MCL 712B.13 nevertheless addresses two situations involving a parent who did not consent under subsection (1). First, MCL 712B.13(6) pertains to a parent who merely executed a consent to adoption under MCL 710.43 and MCL 710.44. Like MCL 712B.13(3), subsection (6) allows a parent to withdraw consent at any time before entry of a final order for adoption. Subsection (6) does not apply here because respondent father did not consent to adoption under MCL 710.43 and MCL 710.44.

Second, MCL 712B.13(5) applies to a parent who executed a release under MCL 710.28 and MCL 710.29 during a child protective proceeding under MCL 712A.2(b). As the Macomb Circuit Court found, respondent father executed this type of release. Subsection (5) does not address or provide for withdrawal of the release. Rather, it requires the court to "make a finding that culturally appropriate services were offered." In addition, it provides that this type of release is subject to MCL 712B.15, which in turn addresses, *inter alia*, requirements for a proceeding involving a parent who executed a release under MCL 710.28, but did not execute a consent under MCL 712B.13. Again, MCL 712B.15 does not address or provide for withdrawal of the release.

Because MIFPA does not specifically provide whether a parent who executed a release under MCL 710.28 and MCL 710.29 during a child protective proceeding under MCL 712A.2(b) can withdraw a release, we consult ICWA and the Adoption Code, which relate to the same subject matter and share a common purpose. *In re Project Cost*, 282 Mich App at 148.

ICWA, 25 USC 1913(c), provides:

> In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.

This Court interpreted this provision in *In re Kiogima*, a case in which the mother had released her parental rights for purposes of adoption and the court terminated her parental rights on the same day. Quoting *In re JRS*, 690 P2d 10 (Alas, 1984), this Court explained:

> [W]e do not believe that § 1913(c) allows a parent to withdraw a voluntary relinquishment of parental rights after a final order terminating those rights has been entered. Section 1913(c) applies to two kinds of proceedings: to voluntary proceedings for termination of parental rights and to voluntary proceedings for the adoptive placement of Indian children. The consent it refers to may be one of two kinds: a consent to termination of parental rights or a consent to adoptive

placement. A consent to termination may be withdrawn at any time before a final decree of termination is entered; a consent to adoption at any time before a final decree of adoption. If Congress had intended consents to termination to be revocable at any time before entry of a final decree of adoption, the words "as the case may be" would not appear in the statute. Therefore, if the Superior Court's order was a final order, [the] purported revocation was without legal significance. [*In re Kiogima*, 189 Mich App at 12.]

Following the reasoning in *In re Kiogima*, respondent father could not rely on ICWA, 25 USC 1913(c), to withdraw his release after his parental rights were terminated.

Respondent father lacked authority to withdraw his release under the Adoption Code as well. MCL 710.29 provides, in relevant part:

(10) Entry of an order terminating the rights of both parents under subsection (8) terminates the jurisdiction of the circuit court over the child in any divorce or separate maintenance action.

(11) Except as otherwise provided in subsection (12), upon petition of the same person or persons who executed the release and of the department or child placing agency to which the child was released, the court with which the release was filed may grant a hearing to consider whether the release should be revoked. A release may not be revoked if the child has been placed for adoption unless the child is placed as provided in section 41(2) of this chapter and a petition for rehearing or claim of appeal is filed within the time required. A verbatim record of testimony related to a petition to revoke a release shall be made.

(12) Except as otherwise provided in this subsection, a parent or guardian who has signed an out-of-court release but wishes to request revocation of the out-of-court release shall submit a request for revocation to the adoption attorney representing the parent or guardian or the child placing agency that accepted the out-of-court release not more than 5 days, excluding weekends and holidays, after the out-of-court release was signed. The request for revocation from the parent or guardian must be submitted in writing by the parent or guardian who signed the out-of-court release to the adoption attorney representing the parent or guardian or a caseworker from the child placing agency that accepted the out-of-court release. The request for revocation is timely if delivered to the adoption attorney or the child placing agency not more than 5 days, excluding weekends and holidays, after the out-of-court release was signed. Upon receipt of a timely request for revocation, the adoption attorney or the child placing agency receiving the request for revocation shall assist the parent or guardian in filing the petition to revoke the out-of-court release with the court as soon as practicable. A parent or guardian may file this petition with the court on his or her own. If the parent or guardian files the petition on his or her own, the petition must be filed with the court not more than 5 days, excluding weekends and holidays, after the out-of-court release was signed.

Respondent father did not file a petition with the department or child placing agency, nor was his motion filed within the limited time for a rehearing. See MCL 710.64. Therefore, he could not revoke the release under MCL 710.29(11). Similarly, he did not timely request revocation under MCL 710.29(12). Because neither MIFPA, the ICWA, nor the Adoption Code allowed respondent father to withdraw his release of parental rights, the Macomb Circuit Court properly denied his motion.[9]

## IV. CONCLUSION

In summary, we affirm the Macomb Circuit Court's order denying respondent father's motion to withdraw consent to terminate his parental rights and for return of the children because he does not have a right to withdraw his consent under MIFPA, the ICWA, or the Adoption Code. We vacate the Oakland Circuit Court's order rescinding the order placing the children with petitioners because we conclude that neither ICWA nor MIFPA permit rescission of a placement order due to a change in consent by HAW or the Tribe after entry of the placement order. Because the Oakland Circuit Court did not rule on the factual issue whether adoption was in the children's best interests, or whether circumstances had arisen that made adoption undesirable, we reverse the order denying petitioners' petition for adoption and remand for further proceedings.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan

---

[9] Respondent father argues that the release of his parental rights was void or voidable because a consent to adopt was not executed procedurally pursuant to MCL 712B.13(1). But respondent father did not raise this issue in a request for rehearing. Moreover, he did not argue this error in his application for leave to appeal in this case. This Court limited the appeal "to the issue raised in the application and supporting brief." *In re Williams Minors*, unpublished order of the Court of Appeals, entered December 19, 2016 (Docket No. 335932). Therefore, respondent father's argument is not properly before this Court.